James L. LEWIS, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 94–258C.

United States Court of Federal Claims.

Nov. 15, 1994.

C. Russell Twist, Arlington, VA, for plaintiff.

Michael S. Kane, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger and David M. Cohen, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge.

This case is before the court on defendant's motions to dismiss pursuant to RCFC 12(b)(1) and 12(b)(4). For the reasons set forth below the court grants defendant's motion to dismiss for lack of subject matter jurisdiction.

## FACTS

### I. Background

Prior to 1989 plaintiff, James Lewis[1], became acquainted with Special Agent Frank Caliendo of the Ohio Office of the United States Customs Office ("Customs"). At some point before December 1989 Lewis began to suspect that certain individuals and corporations were violating the Trading With the Enemy Act, 50 U.S.C.App. § 1 et seq. On or about December 1989 Lewis contacted Caliendo and offered to investigate and act as a confidential informant for the government with respect to these suspected violations.

The investigation became known as "Operation Leatherneck" (hereinafter "the operation"), and was approved by Caliendo, Special Agent Hartkop[2] and the United States Department of the Treasury, Customs Service Undercover Committee. At the time Caliendo accepted Lewis' offer to act as a confidential informant, he was allegedly acting within the scope of his duties at the United States Customs Service.

The papers submitted by plaintiff suggest that Lewis and Caliendo reached an express agreement that Customs would pay for the expenses relating to the operation. Although it is not absolutely clear, it also appears Caliendo might have agreed that Lewis would recover an award pursuant to 19 U.S.C. § 1619.

Despite Lewis' expectations, the operation did not lead to any recovery under the customs laws. Therefore, plaintiff was not entitled to payment under 19 U.S.C. § 1619.

### II. Procedural History

On April 25, 1994, plaintiff filed the instant complaint. The stated basis for jurisdiction in this court was an implied-in-fact contract with the United States. Because plaintiff's complaint is short, cryptic, and conclusory, plaintiff's Brief in Opposition to Defendant's Motion to Dismiss was used to interpret Lewis' claim. The argument advanced in plaintiff's papers is that the agreement he reached to provide original information of customs violations in exchange for payment created an implied-in-fact contract under 19 U.S.C. § 1619. Accordingly, plaintiff argued that defendant was bound by an implied contractual condition that neither party would obstruct the performance of the other. Additionally, plaintiff argued that the duty not to hinder performance required the government to assist plaintiff in obtaining a reward by funding the operation and providing plaintiff with access to information that would be helpful to his performance.

Plaintiff alleged that the government breached these implied conditions by: trying to destroy Lewis' undercover identity, taking affirmative action to obstruct and subvert the operation, punishing and retaliating against government officials and plaintiff for "telling the truth about the obstruction of Operation Leatherneck," impeding the investigation of government agencies and Congressman Boehner into the operation, and concealing essential facts about the operation in a deliberate attempt to interfere with the operation. Plaintiff alleged that government interference prevented him from obtaining information of at least eighty cases of customs violations. He sought damages in the amount of $20,000,000, the amount he allegedly would have received if the government obtained a one million dollar recovery in each case.

Shortly after filing his complaint, plaintiff filed two requests for discovery under RCFC 27, seeking documents relating to the substance of his undercover investigations. Defendant moved to strike both requests on the

---

**1.** Plaintiff is proceeding under a pseudonym. Because of the outcome of this case, the court deems it unnecessary to determine whether to permit the use of a pseudonym.

**2.** Hartkop is the Assistant Special Agent in charge of the Cleveland Office of the Customs Service.

ground that they failed to comply with Rule 27.

By motion dated June 6, 1994, defendant argued that this court lacks subject matter jurisdiction over plaintiff's claim because it sounds in tort. In the alternative, defendant asked the court to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted.

## DISCUSSION

*A. Jurisdiction*

▆▆▆ When ruling on a motion to dismiss for lack of subject matter jurisdiction the court must generally assume unchallenged facts are true. *Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)); *Reynolds v. Army & Air Force Exchange Service,* 846 F.2d 746, 747 (Fed.Cir.1988). If facts relevant to subject matter jurisdiction are contested, however, the court is required to decide those facts. *Reynolds,* 846 F.2d at 747. Although the court must generally assume unchallenged facts are true when deciding whether it has subject matter jurisdiction, the court is not required to accept plaintiff's framing of the complaint. *See Smithson v. United States,* 847 F.2d 791, 794 (Fed. Cir.1988), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989). Instead the court should look to the plaintiff's factual allegations to ascertain the true nature of the claim. *See id.* In addition, in deciding an issue of subject matter jurisdiction the court may look to matters outside the pleadings. *See Saint Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 287–88 n. 10, 58 S.Ct. 586, 590 n. 10, 82 L.Ed. 845 (1938) (citations omitted).

### 1. *Jurisdiction Over Claims Sounding in Tort*

▆▆▆ The United States Court of Federal Claims was established for the specific purpose of paying the debts of the United States. *United States v. Sherwood,* 312 U.S. 584, 587, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941). Its jurisdiction is derived from the Tucker Act, 28 U.S.C. § 1491, which provides that the court may:

> [R]ender judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C.A. § 1491(a)(1) (West 1994). Defendant correctly noted that claims of tortious interference with contract will generally be construed as tort claims, and will fall outside the jurisdiction of this court. *See, e.g., Berdick v. United States,* 612 F.2d 533, 536, 222 Ct.Cl. 94 (1979); *Eubanks v. United States,* 25 Cl.Ct. 131, 139 (1992); *Lucas v. United States,* 25 Cl.Ct. 298, 310 (1992). Nevertheless, the Tucker Act does support jurisdiction over claims otherwise sounding in tort if they arise out of a contract between the parties. *Hatzlachh Supply Co. v. United States,* 444 U.S. 460, 465, 100 S.Ct. 647, 650–51, 62 L.Ed.2d 614 (1980) (per curiam) (quoting *Keifer & Keifer v. Reconstruction Fin. Corp.,* 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939)); *accord Fountain v. United States,* 427 F.2d 759, 761, 192 Ct.Cl. 495 (1970) (per curiam), *cert. denied,* 404 U.S. 839, 92 S.Ct. 131, 30 L.Ed.2d 73 (1971); *Bird & Sons, Inc. v. United States,* 420 F.2d 1051, 1054, 190 Ct.Cl. 426 (1970). Therefore, if plaintiff's claim arises out of a contract with the United States, this court does not lack jurisdiction merely because the allegations sound in tort.

In this case several of the alleged breaches do not arise out of a contractual obligation. Specifically, the allegations asserted in paragraphs 13, 14, and 15 are tort rather than contract claims and are outside the jurisdiction of the court. They assert that defendant punished and retaliated against persons who have told the truth about government attempts to obstruct the operation, and that the government tried to prevent investigations into the operation. The court is unable to discern any contractual basis for these claims.

▆▆▆ However, assuming *arguendo* that the alleged implied-in-fact contract existed,

the remaining paragraphs containing allegations that defendant obstructed and prevented performance are based on the implied contractual condition not to hinder the other party's performance. *See, e.g., Petrofsky v. United States*, 616 F.2d 494, 497, 222 Ct.Cl. 450 (1980) (citations omitted), *cert. denied*, 450 U.S. 968, 101 S.Ct. 1488, 67 L.Ed.2d 618 (1981). Therefore, the court will not dismiss the complaint *merely* upon the ground that it sounds in tort.

### 2. *Jurisdiction Based on a Contract With the United States*

Although the court concludes that plaintiff's allegations are based on an alleged contract, the court's inquiry does not end with this determination. In the instant case defendant also argued that, based on the pleadings, there could not have been a contract with the United States. Defendant's challenge goes to the merits of the case as well as the jurisdiction of the court.

█ When challenged jurisdictional facts are so closely tied to the merits of a claim that a dismissal for lack of subject matter jurisdiction is essentially a dismissal on the merits, the court should generally assume jurisdiction and decide the case on its merits. *See Spruill v. Merit Sys. Protection Bd.*, 978 F.2d 679, 686–89 (Fed.Cir.1992); *Janowsky v. United States*, 31 Fed.Cl. 520, 521 (1994); *Truckee–Carson Irr. Dist. v. United States*, 14 Cl.Ct. 361, 369, *aff'd*, 864 F.2d 149 (Fed. Cir.1988). This general rule does not apply, however, where a plaintiff's statement of a jurisdictional basis is clearly without merit. *Binderup v. Pathe Exchange*, 263 U.S. 291, 305–06, 44 S.Ct. 96, 98, 68 L.Ed. 308 (1923) ("Jurisdiction, as distinguished from merits, is wanting only where the claim set forth in the complaint is so unsubstantial as to be frivolous, or, in other words, is plainly without color of merit.") (citations omitted); *see also Truckee–Carson*, 14 Cl.Ct. at 369. The court concludes that the instant case falls within this narrow exception and must be dismissed.

█ Under 19 U.S.C. § 1619 an informant who provides the government with original information of customs violations is entitled to an award of up to twenty-five percent of any recovery of customs duties withheld, or any fine, penalty or forfeiture imposed, if the original information led to the recovery. 19 U.S.C.A. § 1619(a) (West Supp. 1994) To be eligible for an award under section 1619 therefore: i) an informant must provide the government with original information of customs violations, and ii) the information must lead to a net recovery for the United States. *Id.* Nothing in section 1619 obligates the government to take any action, or refrain from taking any action with respect to original information. The government is not required under section 1619 to "fund" informants' investigations, furnish confidential information to informants, provide manpower to assist informants, or even seek a recovery upon the receipt of original information. The only obligation the government has under section 1619 is to pay the party who provides original information a portion of any amount actually recovered.

Plaintiff is clearly not eligible for an award under section 1619 because the investigation was halted before Lewis obtained original information of customs violations. Therefore, there also was no recovery based on the investigation. Although Lewis did not contend that he was eligible for an award under section 1619, he argued that he had an enforceable contract pursuant to section 1619.

█ Plaintiff's claim that he has an implied-in-fact contract with the United States is based on his belief that 19 U.S.C. § 1619 is an offer that can be accepted by the promise of performance. Under this theory plaintiff alleged he had a binding contract with the United States when he offered to investigate customs violations, despite the fact that no recovery had been obtained. The next link in plaintiff's chain of logic is that because there was a binding contract the government was obligated not to interfere with plaintiff's performance. *See Petrofsky*, 616 F.2d at 497 (citations omitted). Defendant correctly notes that under plaintiff's theory the government would necessarily have been obligated to seek a recovery so that plaintiff could obtain an award.

Plaintiff's interpretation of section 1619 is untenable. It is impossible to reconcile the

plain language of section 1619 which requires original information *and* a recovery before an informant will be eligible for an award, with an implied-in-fact contract that makes the government liable for damages where there has been no recovery because there has been no prosecution.[3]

■ Further, even if Customs had expressly promised plaintiff he would be paid under the terms of section 1619, that promise would have to be read merely as a statement that plaintiff could be paid under section 1619 *if* he met the statute's requirements. *Cf. Fountain,* 427 F.2d at 761–62 ("Plaintiff's theory seems to be that the oral promises allegedly made to him have somehow a legal being of their own apart from the statute and regulation the involved officials were supposed to be administering. This must fail. The rather general commitments alleged must be construed as promises to pay relocation expenses to plaintiff if and to the extent that he qualified himself to receive them. Any promises that went further were beyond the scope of the officials' authority and therefore unenforceable.") (citing *Utah Power & Light Co. v. United States,* 243 U.S. 389, 409, 37 S.Ct. 387, 391, 61 L.Ed. 791 (1917)). A promise to pay plaintiff under section 1619 can not be interpreted to obligate the government to prosecute. Further, it could not have obligated the government to continue funding an investigation it did not intend to prosecute to completion. *See Howard v. United States,* 31 Fed.Cl. 297, 306–07 (1994).

■ In addition, it is well-settled that the decision whether to prosecute in a particular case is committed to the executive branch. *Heckler v. Chaney,* 470 U.S. 821, 831, 105 S.Ct. 1649, 1655–56, 84 L.Ed.2d 714 (1985). This decision is not subject to review by the courts. Therefore, an implied promise to prosecute could not be enforced by this court. *Id.; accord Howard v. United States,* 23 Cl.Ct. 432, 434 (1991).

Because the court determines that, as a matter of law, there can be no implied-in-fact contract under section 1619 that binds the government before an informant is eligible

for an award under the terms of section 1619, it is not necessary to address the remaining points raised in defendant's motion to dismiss.

B. *Rule 27 Does Not Prohibit the Court From Granting a Motion to Dismiss before Lewis Has Had an Opportunity to Amend His Complaint*

■ Plaintiff argues that because his complaint was filed under Rule 27, he is insulated from a motion to dismiss made before he filed an amended complaint. Nothing in the plain language of Rule 27, however, mandates this conclusion. Rather, the rule is silent on the issue of whether, or when, a defendant can file a motion pursuant to Rule 12(b). *See* RCFC 27. Rule 27 does provide that "defendant *need not* respond to a preliminary complaint filed under this rule, but *shall* otherwise respond to the amended complaint...." RCFC 27(a)(3) (emphasis added). Therefore, it is clear from the plain language of the rule that while a defendant is *required* to answer an amended complaint, it is not *prohibited* from answering a preliminary complaint.

In addition, where a responsive pleading is permitted, a motion to dismiss pursuant to Rule 12(b) is to be made before answering. RCFC 12(b). Reading Rule 27(a)(3) in conjunction with Rule 12(b), it appears that nothing in Rule 27(a)(3) prohibits defendant from filing, or the court from granting, a 12(b) motion before plaintiff has filed an amended complaint.

■ Although Rule 27 does not bar the court from granting the instant motion to dismiss, it is appropriate to exercise extreme caution when granting a 12(b)(1) motion based on a preliminary complaint. To the extent perceived defects in the pleading are ones that could be cured by appropriate discovery, it would be inappropriate for the court to dismiss the complaint for lack of jurisdiction without giving plaintiff an opportunity to make such a request or amend his complaint.

---

**3.** Section 1619 does not create a contract even after an informant has provided customs with original information. A binding contract could

only be formed, if at all, after Customs has "accepted" an informant's offer by obtaining a recovery.

Rule 27 provides, in pertinent part, that:

When a plaintiff cannot state a case with the requisite particularity without an examination of documents or things or other information in the possession of the United States, and the plaintiff has been unable upon application to obtain a sufficient examination of such documents or things or other information, such plaintiff may file a complaint stating the plaintiff's claim as far as in the plaintiff's power. The complaint shall state specifically: (A) that it is filed under this rule; (B) the subject matter of a claim cognizable by this court, with as much particularity as plaintiff can provide; and (C) a description of the documents or things or other information required as definite as plaintiff can provide.

RCFC 27(a)(1). The rule allows a proper party to obtain the limited discovery necessary to state a claim with sufficient particularity to avoid dismissal. In instances where a party has sufficient information to state a claim, but the claim is clearly without merit, or is outside the jurisdiction of the court, Rule 27 cannot be used to obtain discovery. In the instant case, plaintiff alleged jurisdiction based on an implied-in-fact contract with the United States under section 1619. Plaintiff failed to allege any facts upon which the court could determine that such a contract was more than a flimsy pretext to obtain jurisdiction. Instead, ignoring the facts relevant to whether such a contract existed or was enforceable, plaintiff argued merely that he should be allowed to discover evidence to prove the government acted in bad faith.

Plaintiff has filed two documents seeking discovery of information in connection with this case. According to Lewis discovery will: provide the names of the Committee that approved the operation, substantiate his claim that the committee authorized the use of $40,000 to fund the operation, furnish additional acts of government interference, and prove Lewis' claim that the government removed *Brady* material from a criminal file to facilitate prosecution of an accused criminal. Plaintiff claims this discovery "proves what Mr. Lewis is telling the Court. It demonstrates corruption in the government of the United States and it demonstrates that Defendant breached it's duty to Mr. Lewis under the contract." Even if plaintiff's discovery requests were deemed to be motions, requests for information relating to the perceived corruption and bad faith of the government exceeds the scope of discovery intended under Rule 27.

To the extent discovery would provide the names of the officials who approved the operation, and prove that the committee authorized $40,000 to be spent on the operation, this information would not provide a basis on which this court could find a contract. To establish an enforceable contract with the United States, the contracting official must have the authority, either express or implied to bind the United States. *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed.Cir.1989). Even if the officials who allegedly approved Operation Leatherneck had the authority to set up such an operation, as a matter of law, they could not have had the authority to bind the United States to prosecute customs violations or continue the investigation once it was determined that prosecutions would not occur. The court further notes that although Lewis has alleged that discovery will lead to the names of the committee members, and prove a fund was set up for Operation Leatherneck, his discovery requests were not tailored to discover this information, except by happenstance.

Therefore, to the extent plaintiff's requests were motions under Rule 27, plaintiff's motions for discovery are denied. Because the court determines that discovery will not assist plaintiff in stating a colorable claim within the jurisdiction of this court, and amending the complaint would be futile in light of its overwhelming defects, the court deems it unnecessary to delay a decision on defendant's motion to dismiss.

## CONCLUSION

Because the court determines that plaintiff's stated basis for jurisdiction is so clearly lacking as to border on the frivolous, defendant's motion to dismiss for lack of subject matter jurisdiction is granted. The Clerk is directed to dismiss the complaint without

prejudice. All other motions filed in this case are moot.

**IT IS SO ORDERED.**