James L. **LEWIS**, Plaintiff–Appellant,

v.

The **UNITED STATES**, Defendant–Appellee.

No. 95–5038.

United States Court of Appeals, Federal Circuit.

Nov. 16, 1995.

Stephen Shelnutt, Arlington, Virginia, argued for plaintiff-appellant. With him on the brief was Charles Russell Twist, Arlington, Virginia.

Mary L. Smith, Commercial Litigation Branch, Department of Justice, Washington, D.C., argued for defendant-appellee. With her on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Michael S. Kane.

Before NEWMAN, Circuit Judge,
BENNETT, Senior Circuit Judge, and
BRYSON, Circuit Judge.

BRYSON, Circuit Judge.

Appellant, proceeding under the pseudonym James L. Lewis, claims that he is entitled to a $20,000,000 recovery against the United States. His theory is that by offering to obtain information for the Customs Service, he entered into an implied-in-fact contract with the government, and that the government interfered with his rights under that contract. The Court of Federal Claims dismissed the complaint, holding that the statute on which Lewis relies does not give rise to a contract that accords enforceable rights to any person who agrees to provide information to the Customs Service. *Lewis v. United States,* 32 Fed.Cl. 301 (1994). We affirm.

I

According to the allegations in his complaint, Lewis contacted a United States Customs Service agent in 1989 and offered to provide information concerning the purchase and importation of arms from Vietnam, activities that would violate the Trading With the Enemy Act, 50 U.S.C.App. § 1 *et seq.* The agent allegedly accepted Lewis's offer after obtaining the approval of a supervisor in a regional Customs Service office. Lewis alleges that the Customs Service agreed to pay his expenses in connection with the investigation and ultimately to provide him with an award for his services under 19 U.S.C. § 1619.

No award was ever paid, because the investigation was terminated without any arrests being made or enforcement proceedings being initiated. Lewis then filed a complaint in the Court of Federal Claims, in which he alleged that by agreeing to provide information he had entered into an implied-in-fact contract with the government, and that by obstructing and otherwise failing to pursue the investigation, Customs officials had interfered with his performance under that contract. Lewis sought $20,000,000 in damages, the amount he claims he would have received had the government successfully prosecuted all the violations about which he alleged he could have provided information.

Relying on Rule 27 of the Rules of the Court of Federal Claims, Lewis filed discovery requests for documents relating to the merits of his claim. The government responded by moving to dismiss the complaint for lack of jurisdiction or for failure to state a claim upon which relief could be granted.

The trial court dismissed the complaint in a thorough opinion with which we are in general agreement. The court first noted that a claim of tortious interference with a contract is cognizable under the Tucker Act, 28 U.S.C. § 1491, if it arises out of a contract with the government. The court, however, held that Lewis had failed to establish a legal basis for his claim that his offer to provide information to the Customs Service resulted in the formation of a contract. The court explained that 19 U.S.C. § 1619 does not give rise to an implied contract, but simply authorizes the Secretary of the Treasury to grant an award to an informant who provides information that leads to a monetary recovery. Because there was no contract, the court denied Lewis's discovery requests, which were designed to elicit information that Lewis regarded as pertinent to the question whether the government breached its obligations under the putative contract. Finally, finding that Lewis's contractual basis for jurisdiction was "so clearly lacking as to border on the frivolous," 32 Fed.Cl. at 307, the court dismissed the complaint for want of jurisdiction.

## II

On appeal, Lewis renews his claim that he entered into an implied-in-fact contract with the government, which the government breached by hindering and preventing his performance. Lewis's theory is that the Customs Service "informer award" statute, 19 U.S.C. § 1619, constitutes an offer, under which the United States promises to pay an award to anyone who provides original information regarding violations of the customs laws. Section 1619 provides, in relevant part:

(a) If—

(1) any person who is not an employee or officer of the United States—

.  .  .  .  .

(B) furnishes to a United States ... customs officer original information concerning—

(i) any fraud upon the customs revenue, or

(ii) any violation of the customs laws or the navigation laws which is being, or has been, perpetrated or contemplated by any other person; and

(2) such ... information leads to a recovery of—

(A) any duties withheld, or

(B) any fine, penalty, or forfeiture of property incurred;

the Secretary [of the Treasury] may award and pay such person an amount that does not exceed 25 percent of the net amount so recovered.

The statute makes clear that, in order for an informant to be eligible for an award under section 1619, several conditions must be met. First, the informant must provide "original information" to the Customs Service. Second, the information must result in an investigation and prosecution of the violator that leads to an actual recovery of duties, a fine, a penalty, or a forfeiture. While it is unclear whether Lewis ever supplied any information regarding the alleged customs violations, it is clear that the alleged violations never led to an enforcement action or a recovery of any kind. Lewis therefore never met the second condition under section 1619 and was not eligible for an award.

Lewis argues that section 1619 should be read as an offer to pay an award for any information leading to a recovery, and he contends that by agreeing to collect information, he accepted that offer. At that point, he argues, the government was bound to pursue the investigation and ultimately refer the matter to the Department of Justice, so that the Department of Justice could make a determination whether to institute enforcement proceedings. That argument, however, is contrary to well-settled principles of contract law and to the statutes governing Customs Service investigations.

### A

■■■ An implied-in-fact contract is one "founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Baltimore & Ohio R.R. Co. v. United States*, 261 U.S. 592, 597, 43 S.Ct. 425, 426–27, 67 L.Ed. 816 (1923). *See also Porter v. United States*, 496 F.2d 583, 590, 204 Ct.Cl. 355 (1974). Like an express contract, an implied-in-fact contract requires "(1) mutuality of intent to contract; (2) consideration; and, (3) lack of ambiguity in offer and acceptance." *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed.Cir.1990), *cert. denied*, 501 U.S. 1230, 111 S.Ct. 2851, 115 L.Ed.2d 1019 (1991). When the United States is a party, a fourth requirement is added: the government representative "whose conduct is relied upon must have actual authority to bind the government in contract." *Id.* Lewis's claim that section 1619 gave rise to a contract in this case fails on the first and third of the conditions for establishing an implied-in-fact contract.

■■■ Section 1619 expresses no intent to bind the government if the statutory requirements are not met, nor can such intent be inferred from the terms of the statute. Rather, section 1619 empowers the Secretary to make an award only if information is provided and the information leads to a recovery. The legislative history of section

1619 also provides no support for Lewis's position that the statute constitutes an offer that can be accepted by a promise to perform. In fact, in a 1986 amendment Congress enlarged the discretion already given the Secretary of the Treasury in deciding whether to award payments to informants under section 1619. *See* H.R.Rep. No. 794, 99th Cong., 2d Sess. 6, 16–17 (1986). We therefore agree with the trial court that section 1619 does no more than provide that, if all the statutory conditions are met, the Secretary of the Treasury may make an award to an informant of up to a specified amount from government funds.

■ Lewis suggests that the purported statutory offer was reaffirmed by the Customs Service agents who spoke with him concerning his potential information, thereby evidencing the necessary intent to bind the government. As the trial court noted, however, any promise by Customs Service officials to make an award under a statute that specifically authorizes such awards only under certain conditions must be construed at most as a promise to pay if the promisee meets all the conditions of the statute. *See Fountain v. United States*, 427 F.2d 759, 761–62, 192 Ct.Cl. 495 (1970), *cert. denied*, 404 U.S. 839, 92 S.Ct. 131, 30 L.Ed.2d 73 (1971). Because Lewis did not satisfy the requirements of the statute, he had no right to any recovery.

■ Section 1619 also does not contain sufficiently definite terms to serve as the basis for a contract. In *Merrick v. United States*, 846 F.2d 725 (Fed.Cir.1988), this court held that a similar statute, 26 U.S.C. § 7623, did not contractually bind the government to pay a reward. The court noted that only after the informant and the government agreed on a specific reward did a contract arise. *See also Gordon v. United States*, 36 F.Supp. 639, 640, 92 Ct.Cl. 499 (1941) (under 26 U.S.C. § 7623, no contract found between government and informant in the absence of an offer to pay a definite sum). Lewis does not allege that the government ever offered a specific sum or percentage of the funds that might ultimately be recovered. Therefore, the indefiniteness of the statutory "offer" would prevent the for-

mation of a valid contract even if an intent to be bound could be inferred from the statute.

**B**

■ Lewis's argument derives no support from the statutes governing Customs Service investigations. Although Lewis concedes that the Department of Justice may exercise prosecutorial discretion to refuse to bring enforcement proceedings in customs cases, he argues that the Customs Service has no discretion to decline to investigate matters brought to its attention, but must refer all investigative matters to the Department of Justice. He argues that any information he provided therefore should have been forwarded to the Department of Justice for its consideration, and that the Customs agents' failure to do so constituted a breach of his implied-in-fact contract.

Lewis relies on 19 U.S.C. §§ 1602 and 1603(b), which state in relevant part:

> It shall be the duty of any officer, agent, or other person authorized by law to make seizures ... to report immediately to [the appropriate] customs officer every violation of the customs laws.

19 U.S.C. § 1602.

> Whenever a seizure of merchandise for violation of the customs laws is made, or a violation of the customs laws is discovered, and legal proceedings by the United States attorney in connection with such seizure or discovery are required, it shall be the duty of the appropriate customs officer to report promptly such seizure or violation to the United States attorney for the district in which such violation has occurred, or in which such seizure was made....

19 U.S.C. § 1603(b).

■ We reject Lewis's contention that those statutes require Customs Service officials to report all information relating to potential customs violations to the Department of Justice. The decision whether to investigate a case and refer it for enforcement proceedings is normally committed to the discretion of the investigative agency, *Heckler v. Chaney*, 470 U.S. 821, 832, 105 S.Ct. 1649, 1656, 84 L.Ed.2d 714 (1985), and

sections 1602 and 1603(b) do not contravene that rule.

Section 1602 states that Customs Service officials have a duty to report violations. Information accusing someone of a violation, however, is not the same as a violation known to Customs Service officials. Moreover, the reporting required by section 1602 is to be made to an appropriate Customs Service officer, not to the Department of Justice.

Section 1603(b) deals with referrals to the Department of Justice, but that statute lends no support to Lewis's argument. Section 1603(b) instructs Customs Service officers to promptly report to the Department of Justice violations of the customs laws that the officers find to require legal proceedings. By qualifying the reporting obligation as it does, that statute plainly contemplates that the Customs Service will exercise discretion in determining whether a particular matter constitutes a "violation" and whether that violation is such that "legal proceedings" are "required." The statute thus does not impose on Customs Service officials the duty to report every piece of information regarding alleged violations of the customs laws to the Department of Justice for its consideration.

■ Even if sections 1602 and 1603 established mandatory obligations to refer cases to the Department of Justice, Lewis still could not base a claim on the violation of those statutes. As interpreted by the Supreme Court, sections 1602 and 1603 are merely internal requirements intended to guide officers' conduct within the Customs Service; they do not provide a remedy to an outside party. *United States v. James Daniel Good Real Property,* — U.S. —, — – —, 114 S.Ct. 492, 506–07, 126 L.Ed.2d 490 (1993). Those statutes therefore do not accord Lewis or any other informant an enforceable right to have their information passed on to the Department of Justice for its consideration.

*Dorsheimer v. United States,* 74 U.S. (7 Wall.) 166, 19 L.Ed. 187 (1868), on which Lewis relies, is entirely inapposite. The most that can be derived from that opinion that is pertinent here is the unremarkable observation that collectors of customs duties have a duty to collect them. There is no suggestion in *Dorsheimer* that the Customs Service is compelled to pursue enforcement proceedings in every case, or that the asserted duty is judicially enforceable at the behest of private parties.

## III

■ Lewis contends that because he filed his complaint under Rule 27 of the Rules of the Court of Federal Claims, the court should not have dismissed the complaint before allowing him discovery. Rule 27 allows the Court of Federal Claims to treat a complaint as preliminary if the plaintiff "cannot state a case with the requisite particularity without an examination of documents or things or other information in the possession of the United States." The information that Lewis sought went to the question whether the government had interfered with Lewis's presumed contract rights. None of the requested information, however, could convert section 1619 into an offer for a contract. In light of Lewis's failure to identify any discoverable information that could cure the fundamental defect in his complaint, the trial court did not err in dismissing the complaint before allowing Lewis his requested discovery.

## IV

■ Lewis invoked the jurisdiction of the Court of Federal Claims by alleging that a contract arose between himself and the United States. The trial court found as a matter of law that there was no such contract. The court noted that in that setting the normal disposition would be to dismiss the complaint for failure to state a claim, rather than for want of jurisdiction. *See Bell v. Hood,* 327 U.S. 678, 681–83, 66 S.Ct. 773, 775–76, 90 L.Ed. 939 (1946); *Spruill v. Merit Sys. Protection Bd.,* 978 F.2d 679, 686–88 (Fed.Cir. 1992); *Amgen, Inc. v. United States Int'l Trade Comm'n,* 902 F.2d 1532, 1536–37 (Fed. Cir.1990). After acknowledging that general rule, however, the trial court invoked an exception that permits dismissals on jurisdictional grounds if the claim is "wholly insubstantial and frivolous." *Bell v. Hood,* 327 U.S. at 682–83, 66 S.Ct. at 776; *Amgen, Inc.,* 902 F.2d at 1537.

■ The trial court was correct in identifying the general rule. Justice Jackson's explanation of the rule, as applied in the context of federal question jurisdiction, is perhaps the clearest:

As frequently happens where jurisdiction depends on subject matter, the question whether jurisdiction exists has been confused with the question whether the complaint states a cause of action.... If the complaint raises a federal question, the mere claim confers power to decide that it has no merit, as well as to decide that it has.

*Montana–Dakota Utilities Co. v. Northwestern Pub. Serv. Co.*, 341 U.S. 246, 249, 71 S.Ct. 692, 694, 95 L.Ed. 912 (1951). *See also Bell v. Hood*, 327 U.S. at 685, 66 S.Ct. at 777 (district court has jurisdiction if "the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another"); *Hart v. B.F. Keith Vaudeville Exch.*, 262 U.S. 271, 273, 43 S.Ct. 540, 541, 67 L.Ed. 977 (1923) ("if the bill or declaration makes a claim that if well founded is within the jurisdiction of the Court it is within that jurisdiction whether well founded or not"). The Court of Claims has applied the same principle in holding that claims of statutory entitlement and an implied-in-fact contract are within the court's jurisdiction, even if the claims are nonmeritorious. *Ralston Steel Corp. v. United States*, 340 F.2d 663, 666–69, 169 Ct.Cl. 119, *cert. denied*, 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 723 (1965). Under this general rule, a complaint alleging that the plaintiff has a right to relief on a ground as to which the court has jurisdiction raises a question within the court's subject matter jurisdiction as long as the asserted basis of jurisdiction is not pretextual, *i.e.*, as long as the jurisdictional ground asserted in the complaint does not "appear[ ] to be immaterial and made solely for the purpose of obtaining jurisdiction." *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913) (no jurisdiction if "plaintiff was not really relying upon the patent law for his alleged rights"); *Excelsior Wooden Pipe Co. v. Pacific Bridge Co.*, 185 U.S. 282, 287, 22 S.Ct. 681, 683, 46 L.Ed. 910 (1902) (no jurisdiction if jurisdictional allegations "were immaterial and made for the purpose of creating a case cognizable by the court").

To be sure, the Supreme Court has stated that there may be instances in which a claim that is otherwise within the court's jurisdiction is so insubstantial on its merits that a dismissal may be termed jurisdictional. In this century, however, the Court's references to that exception to the general rule have often been unenthusiastic, and it may be that the exception is best viewed as a vestige of nineteenth-century practice that has no continuing vitality in the age of modern pleading. *See Montana–Dakota Utilities Co. v. Northwestern Pub. Serv. Co.*, 341 U.S. at 249, 71 S.Ct. at 694 ("Even a patently frivolous complaint might be sufficient to confer power to make a final decision that is [on the merits], binding as *res judicata* on the parties."); *Bell v. Hood*, 327 U.S. at 683, 66 S.Ct. at 776 ("The accuracy of calling these dismissals jurisdictional has been questioned."); *see also Yazoo County Indus. Dev. Corp. v. Suthoff*, 454 U.S. 1157, 1160, 102 S.Ct. 1032, 1034, 71 L.Ed.2d 316 (1982) (Rehnquist, J., dissenting from denial of certiorari) (jurisdictional dismissals for "insubstantiality" are "wholly at odds with Rule 12(b) of the Federal Rules of Civil Procedure"). The "frivolousness" exception has no apparent grounding in the Federal Rules of Civil Procedure, or the parallel Rules of the United States Court of Federal Claims. Moreover, in light of the rule that a jurisdictional dismissal is not *res judicata* as to the underlying merits of the dispute, *see Do–Well Machine Shop, Inc. v. United States*, 870 F.2d 637, 640 (Fed.Cir.1989), the "frivolousness" exception gives rise to the anomaly that if frivolous claims are dismissed for want of jurisdiction, rather than on the merits, the principles of *res judicata* will be least applicable to the most insubstantial claims.

Because the Supreme Court has not overturned the line of cases countenancing the dismissal of frivolous claims on jurisdictional grounds, we are not free to disregard that doctrine. Nonetheless, the Supreme Court has made clear that such jurisdictional dismissals for frivolousness must be "confin[ed]"

to cases "that are very plain." *Hart v. B.F. Keith Vaudeville Exch.*, 262 U.S. at 274, 43 S.Ct. at 541. *See also Hagans v. Lavine*, 415 U.S. 528, 542–43, 94 S.Ct. 1372, 1381–82, 39 L.Ed.2d 577 (1974). While we have found Lewis's claim to be meritless, we do not think it is so starkly frivolous that the trial court should have departed from the ordinary course of dismissing the complaint for failure to state a claim. Our difference with the trial court on this technical issue does not require a formal modification of the judgment, however. We agree that the complaint was properly dismissed; it is sufficient simply to note that the dismissal should be treated as one on the merits, rather than on jurisdictional grounds, if the issue should become material in any later proceeding.

*AFFIRMED.*