**BMR GOLD CORPORATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 97–274 L.**

United States Court of Federal Claims.

June 30, 1998.

---

Robert A. Graham, Jr., Arcadia, CA, for plaintiff.

Kristine S. Tardiff, Washington, DC, with whom was Assistant Attorney General Lois J. Schiffer, for defendant. Richard Eddy, United States Department of the Army, of counsel.

## ORDER

TIDWELL, Senior Judge.

This case is before the court on defendant's motion to dismiss pursuant to RCFC 12(b)(1) and (4) for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. In support of its motion, defendant advances three alternative arguments: (1) that plaintiff's takings claim is barred by the six-year statute of limitations and is therefore outside of this court's jurisdiction; (2) that plaintiff's claim falls outside of this court's jurisdiction because it sounds in tort; and (3) that a portion of plaintiff's takings claim must be dismissed for failure to state a claim because plaintiff consented to that particular intrusion. For the reasons set forth below, the court denies defendant's motion to dismiss on the statute of limitations and tort grounds, and grants defendant's motion to partially dismiss the portion of the alleged taking to which plaintiff granted its consent.

## BACKGROUND

Plaintiff, BMR Gold Corporation ("BMR"), a Canadian corporation, is the lessee of real property known as the American Mine, located in Amboy, California. The property is adjacent to the Marine Corps Air Ground Combat Training Center in Twenty–Nine Palms, California. Plaintiff alleges that it operates a gold mine on the property under a lease agreement that grants to it "all right, title and interest to extract minerals, precious metals, and operate a mining facility on the real property." Pl.'s Am. Compl. at 2.[1]

1. Plaintiff labeled its original complaint in this court, filed May 9, 1997, its "Amended Complaint for Damages for Inverse Condemnation," presumably because it had originally filed a claim for damages in the District Court. Plaintiff then amended its original complaint in this court, and labeled it a "Second Amendment [sic] Complaint for Damages for Inverse Condemna-

Plaintiff alleges that from as early as 1974,[2] during which the property had been leased and operated by it and other previous lessees, defendant has repeatedly interfered with the use of the property through military operations. Plaintiff alleges that such interference has included: Marine infantry troops using the property for maneuvers; armored vehicles entering the property; live ammunition being fired onto and from the property; and bombs, rockets, and gunfire being directed onto the property from aircraft. Moreover, plaintiff claims that on numerous occasions shell casings, bomb craters and armored vehicle tracks have been found on the property.

In its amended complaint, plaintiff describes two specific events that occurred during the term of its lease. First, on or about October 12, 1993, Frank L. Hillemeyer ("Hillemeyer"), an alleged employee of BMR, met at the American Mine with two representatives from the San Bernardino County Department of Environmental Health Service. Defendant admits that while Hillemeyer and the two representatives were inspecting the American Mine site, a United States Marine Corps F/A–18 aircraft performed certain maneuvers over the property. Subsequently, Hillemeyer and the two representatives were allegedly near the open pit area of the mine when the Marine Corps F/A–18 aircraft mistakenly dropped a smoke target marker on the open pit area. Thereafter, two United States Navy F/A–18 aircraft dropped two MK83 bombs on the property and three MK83 bombs outside of the property, after the target on the property had been mistakenly marked. In addition, the aircraft strafed the target area. Plaintiff characterizes the bombs as "explosions" that allegedly caused the three men to flee the area. Finally, defendant admits that the Marine Corps F/A–18 performed maneuvers over the American Mine property after the two Navy F/A–18s dropped the MK83 bombs. On Oc-

tober 13, 1993, an Explosive Ordnance Disposal team from the Marine Corps Air Ground Combat Center entered the site and located two MK83 craters on the American Mine property.

In addition, defendant admits that on or about April 18, 1994, a Marine Corps helicopter crashed on federal land immediately adjacent to the American Mine site. Marine Corps personnel requested and obtained permission from BMR to enter the American Mine site and use the existing roads on the property to access and recover the helicopter. Plaintiff explains in its complaint that it cites this incident as evidence that the American Mine site is unsafe because it is subject to continued interference from defendant.

Plaintiff claims that as a result of defendant's alleged interference with plaintiff's property' interests, it incurred damages in excess of $50,000. Plaintiff alleges that as a result of the bombing incident on October 12, 1993, it was forced to immediately suspend all work at the American Mine until the Marine Training Center implemented safety procedures to prevent any further interference. Plaintiff also states that, after the incident, it incurred damages as a result of its inability to find personnel and contractors who were willing to work on the property. In addition, plaintiff claims that it was prevented from meeting its annual work commitment under its lease agreement, and that the operating costs of the mine increased significantly. Plaintiff allegedly has had to renegotiate the lease agreement for the operation of the mine site, causing increased lease costs, the need to obtain special insurance insuring against any liability or accident, and the need to collateralize a bond with a letter of credit.

Plaintiff filed its complaint in this court on May 9, 1997, and its amended complaint on January 21, 1998. Plaintiff claims that defendant's actions from October 12, 1993 (the

tion," filed January 21, 1998. For the purposes of clarity, the court will refer to the "amended" complaint filed May 9, 1997, as the complaint, and the "second" amended complaint, filed January 21, 1998, as the amended complaint.

**2.** Plaintiff set forth "1974" as the beginning of the alleged interference with its property rights

in its amended complaint. Pl.'s Am. Compl. at 5. In its original complaint, however, plaintiff set forth "1979" as the date of the beginning of said interference. Pl.'s Compl. at 2. The discrepancy in dates, however, does not affect the court's ruling on defendant's motion to dismiss.

bombing incident) through August 31, 1995 substantially interfered with its mining operations and has therefore caused a taking of the American Mine by the United States.[3] Plaintiff seeks damages, attorney and appraisal fees, and costs. In its answer, defendant asserts that plaintiff's inverse condemnation claim is barred by the six-year statute of limitations and that to the extent plaintiff has alleged a tort, such a claim falls outside of this court's jurisdiction. Defendant thereafter filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

## DISCUSSION

Defendant moved to dismiss this action pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, alleging that plaintiff's claim falls outside of the court's statute of limitations and, in the alternative, that plaintiff's claim sounds in tort. Also in the alternative, defendant moved to partially dismiss plaintiff's claim pursuant to RCFC 12(b)(4), arguing that the helicopter incident cannot be a valid takings claim because the intrusion onto plaintiff's property was pursuant to plaintiff's consent.

## I. Subject Matter Jurisdiction

In considering defendant's motion to dismiss for lack of subject matter jurisdiction, the court must accept as true any undisputed allegations of fact made by the nonmoving party. *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988) (citations omitted). The non-moving party then "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Id.* at 748 (citations omitted). Only contested facts relevant to subject matter jurisdiction must be decided by the court. *Id.* at 747 (citations omitted). Although the court must generally assume the truth of unchallenged facts when deciding its jurisdiction, the court is not required to accept plaintiff's framing of the complaint. *Lewis v. United States*, 32 Fed.Cl. 301, 304

(1994) (citation omitted), *aff'd*, 70 F.3d 597 (Fed.Cir.1995). Rather, the court should look to plaintiff's factual allegations to ascertain the true nature of the claims, as well as matters outside the pleadings. *Lewis*, 32 Fed.Cl. at 304 (citations omitted).

## A. Statute of Limitations

■ The statute of limitations applicable to plaintiff's takings claim provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501 (1994). The statute of limitations is a jurisdictional issue in the Court of Federal Claims, and therefore failure to comply with the statute of limitations places the claim beyond the court's power to consider it. *Soriano v. United States*, 352 U.S. 270, 273, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957). In ruling on a jurisdictional motion, if the "facts reveal any possible basis on which the non-movant might prevail, the motion must be denied." *W.R. Cooper Gen. Contractor, Inc. v. United States*, 843 F.2d 1362, 1364 (Fed.Cir.1988) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)); *see also McDonald v. United States*, 37 Fed.Cl. 110, 113, 119 (1997) (partially denying defendant's motion to dismiss on statute of limitations grounds because the undisputed facts revealed that plaintiff may have prevailed on its argument that its takings claim was timely filed), *aff'd*, 135 F.3d 778 (Fed.Cir.1998). The present task is therefore limited to reviewing the sufficiency of the complaint, and the issue is "whether the claimant is entitled to offer evidence to support the claims," not whether it will ultimately prevail. *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683.

■ Determining when a takings cause of action accrues is highly fact-specific, and "must often be done in a somewhat imprecise manner, this aspect of [takings] cases being in the nature of a jury verdict." *Barnes v. United States*, 210 Ct.Cl. 467, 538 F.2d 865, 873 (1976) (citations omitted). A takings

---

**3.** In its amended complaint, filed January 21, 1998, plaintiff stated that it "does not seek damages for interference prior to October 12, 1993," the date of the bombing incident. Pl.'s Am. Compl. at 5.

claim first accrues "when all the events which fix the government's alleged liability have occurred *and* the plaintiff was or should have been aware of their existence." *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed.Cir.1988) (emphasis in original) (citations omitted). Whether the pertinent events have occurred is determined under an objective standard, and plaintiff need not possess actual knowledge of all relevant facts in order for the cause of action to accrue. *Fallini v. United States*, 56 F.3d 1378, 1380 (Fed.Cir.1995) (citing *Menominee Tribe v. United States*, 726 F.2d 718, 721 (Fed.Cir.1984)), *cert. denied*, 517 U.S. 1243, 116 S.Ct. 2496, 135 L.Ed.2d 189 (1996).

■ Plaintiff's takings claim was filed in this court on May 9, 1997, and therefore such claim is barred by the statute of limitations if it accrued prior to May 9, 1991. In its motion to dismiss, defendant argues that plaintiff's statement in its complaint that interference with the property at issue has occurred "from at least as early as 1974," coupled with the corresponding list of types of interference during this period, demonstrates that plaintiff's claim accrued at that time and is therefore time-barred. Plaintiff argues that while such interference to the property at issue has indeed occurred since 1974 (allegedly involving plaintiff and other previous lessees of the property), a taking did not occur until plaintiff's property interests were injured by the October 12, 1993 bombing incident. Plaintiff cites, for example, the resulting suspension of work, which allegedly was the first time plaintiff experienced a taking of its property interest in the form of damages to its mining operation. Plaintiff, therefore, argues that its claim did not accrue until October 12, 1993.

Defendant cites in support of its argument *Catellus Development Corp. v. United States*, 31 Fed.Cl. 399 (1994), a takings case involving the inadvertent bombing of another's property by the Marine Corps. The case was dismissed as time-barred because the bombing had occurred beginning in the 1950s, and the action was not brought until 1991. *Id.* at 409. Plaintiffs in *Catellus* were owners of the subject property since the 1930s and were notified by letter in 1989 that the Marine Corps had mistakenly believed that a portion of the property was part of a Marine Corps training area. *Id.* at 400–01. The Corps explained in the letter that since the early 1950s, military activities, including bombing from aircraft, had occurred on or near plaintiff's land and, as a result, a possibility existed of the presence of unexploded dud ordnance. *Id.* at 401. After discovery on facts surrounding the statute of limitations issue, the court determined that "a taking claim based on a physical invasion and consequent appropriation of property accrues at the time the invasion is obvious, ascertainable, and permanent." *Id.* at 403, 406–07. The court stated that "[w]hen ordnance falls into an area, a physical invasion of the property takes place, and this is the point at which a taking occurs," because plaintiffs would be deprived of the use of the property from the onset of the bombing activities. *Id.* at 406. In addition, while plaintiffs allegedly had no knowledge of the bombing, as owners they were charged for statute of limitations purposes with knowledge of what "could have been discovered with the type of inquiry expected of a diligent property owner." *Id.* at 408. Because the ordnance allegedly began falling in the 1950s, the statute of limitations was deemed to have run and the action was dismissed as time-barred. *Id.* at 409.

Defendant cites *Catellus* as support that the physical invasions on BMR's property "are all the type of physical invasions that plaintiff was or should have been aware of when they occurred." Def.'s Mot. to Dismiss at 7. Defendant states that because plaintiff admits that such physical invasions have occurred "as early as 1974," the claim accrued at that time and is therefore time barred. The court, however, disagrees with defendant's attempted simplification of the present case. *Catellus* is distinguishable from the case at bar for several reasons, a significant one being its factually more advanced stage in the litigation at the point at which the court considered the dismissal motion. At this stage in the present case, plaintiff has successfully averted dismissal of its claim based upon its argument that *its* property interests were not injured until the October 12, 1993 incident. With the limited facts available at this time, the court is unable to

determine the relation of the prior incidents on the subject property to the 1993 incident, and the impact, if any, of such prior incidents on plaintiff's property interests. Plaintiff has therefore, at this juncture, made a sufficient showing that its cause of action for the taking of its property interests may have accrued within the applicable statute of limitations. Specifically, the limited facts before the court at this juncture indicate that plaintiff has a possible basis upon which it might prevail on its argument that the claim for a taking was timely filed. *See Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683. Accordingly, defendant's motion to dismiss for lack of subject matter jurisdiction on statute of limitations grounds is denied.

### B. Tort Claim

■ Defendant argues that if the court denies its motion to dismiss for lack of subject matter jurisdiction on the statute of limitations issue, plaintiff's claim must be dismissed for lack of subject matter jurisdiction because it sounds in tort. Although a suit for a Fifth Amendment taking lies properly in this court, the Tucker Act expressly precludes this court's jurisdiction over tort claims. 28 U.S.C. 1491(a)(1) (1994); *see Brown v. United States,* 105 F.3d 621, 623 (Fed.Cir.1997) (citations omitted). Whether plaintiff's claim sounds in tort or is a taking depends upon the nature of the government's invasion, and "whether the injury to [plaintiff's] property is in the nature of a tortious invasion of [plaintiff's] rights ... or rises to the magnitude of an appropriation of some interest in [plaintiff's] property...." *Bettini v. United States,* 4 Cl.Ct. 755, 758 (1984) (quoting *National By–Products, Inc. v. United States,* 186 Ct.Cl. 546, 405 F.2d 1256, 1273–74 (1969)). Therefore, if the interference, even if temporary, with plaintiff's property rights is substantial enough, it may rise to the level of a taking. *See Eyherabide v. United States,* 170 Ct.Cl. 598, 345 F.2d 565, 569 (1965); *see also Poorbaugh v. United States,* 27 Fed.Cl. 628, 631 (1993).

■ Determining whether a claim sounds in tort or is properly labeled a taking involves a fact-intensive inquiry. Based on the

evidence before the court at the present time, neither plaintiff nor defendant has provided sufficient information for the court to determine whether defendant's actions rise to the level of a taking or merely constitute tortious interference. Accordingly, dismissal is unwarranted at this juncture, and defendant's motion to dismiss for lack of subject matter jurisdiction on the tort issue is denied.

### II. Dismissal of Takings Claim to Which Plaintiff Granted Its Consent to the Use of the Property

Defendant further asserts that even if the court finds that plaintiff's entire takings claim is within the court's jurisdiction, the portion of plaintiff's claim based upon the April 1994 helicopter incident must be dismissed pursuant to RCFC 12(b)(4) for failure to state a claim upon which relief can be granted. The Supreme Court set forth the standard for evaluating motions to dismiss for failure to state a claim in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *Conley* provides that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Id.* at 45–46, 78 S.Ct. 99 (footnote omitted). Furthermore, a court must construe the allegations in the complaint favorably to plaintiff. *Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989) (citing *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683). This court has held that dismissal under RCFC 12(b)(4) can only be granted if the defendant is able to establish an "insurmountable bar" to plaintiff's relief. *Chavez v. United States,* 15 Cl.Ct. 353, 356 (1988) (citation omitted).

■ Defendant states that to the extent that plaintiff brings its takings claim based upon the April 1994 incident—in which Marine Corps personnel crossed plaintiff's property to reach a helicopter that had crashed on federal land—such a claim must be dismissed because the crossing occurred with plaintiff's permission. The court agrees.[4]

4. It is unclear whether plaintiff limits its takings

claim to the October, 1993 bombing incident or

Although the right to exclude others from one's property is a compensable Fifth Amendment interest, "a property owner relinquishes the right to exclude when the owner consents to the entry, use, and occupation of the subject property." *Scogin v. United States*, 33 Fed.Cl. 285, 291 (1995). Thus, "if a property owner has granted permission to another to occupy the subject property, the 'right to exclude' has been relinquished and not taken." *Id.* at 292. The undisputed facts demonstrate that plaintiff granted its consent to plaintiff to cross its land to reach the helicopter. Consequently, plaintiff's takings claim, if any, based upon the helicopter incident lacks the necessary element of coerciveness and therefore plaintiff can provide no facts that will allow it relief. Accordingly, defendant's RCFC 12(b)(4) motion to partially dismiss any takings claim of plaintiff based upon the April 1994 helicopter incident is allowed.

### CONCLUSION

For the reasons set forth above, defendant's motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1), both on statute of limitations and tort grounds, is denied. Also for the foregoing reasons, defendant's partial motion to dismiss under RCFC 12(b)(4) for failure to state a claim upon which relief can be granted is allowed, and accordingly the portion of plaintiff's takings claim that advances the helicopter incident as described herein as a basis for takings compensation is dismissed. The parties shall contact the court within 30 days to determine how to proceed on the remainder of plaintiff's takings claim.

**IT IS SO ORDERED.**

whether it includes the helicopter incident within its claim for damages. Plaintiff states in its complaint that "this [helicopter] incident only confirmed that Plaintiff's property was unsafe due to continued interference due to the threat of further incidents caused by Defendant's conduct." Pl.'s Am. Compl. at 4. The court addresses defendant's helicopter incident argument in the interest of clarity and in order to narrow from the outset plaintiff's takings claims to those providing a potentially colorable claim for relief.