PER CURIAM.
A. Dean Oswalt, Reinie Oswalt, Craig Oswalt, Michelle Oswalt, Kirk Oswalt, and Stacie Oswalt (the “Oswalts”) seek review of the order of the United States Court of Federal Claims granting the United States’ motion to dismiss certain of their *472 claims for lack of jurisdiction,[1] and staying proceedings as to the remainder. Oswalt v. United States, No. 97-738C, slip op. (Ct.Cl. Oct. 17, 2000). We affirm the judgment of dismissal on other grounds, and remand the Oswalts’ remaining claims.
A party seeking the exercise of jurisdiction under the Tucker Act has the burden of establishing that such jurisdiction exists. Trauma Serv. Group v. United States, 104 F.3d 1321, 1324 (Fed.Cir.1997). A well-pleaded allegation in the complaint is generally sufficient to overcome challenges to subject matter jurisdiction. Id. (citing Do-Well Mach. Shop, Inc. v. United States, 870 F.2d 637, 639-40 (Fed.Cir.1989) (“Jurisdiction, therefore, is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could recover.”)); see also Total Med. Mgmt. v. United States, 104 F.3d 1314, 1319 (Fed.Cir.1997).
However, either a party under RCFC 12(b)(1), or the court on its own motion, may move beyond the complaint to seek a determination of disputed jurisdictional facts. See Hamlet v. United States, 873 F.2d 1414, 1415-16 (Fed.Cir.1989) (considering RUSCC 12(b)(1), predecessor to RCFC 12(b)(1), and similar to Fed. R.Civ.P. 12(b)(1)). In such a circumstance, the court may seek the presentation of affidavits or other evidence, and may order additional discovery and a hearing on jurisdictional issues. See 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350, at 237 (2d ed.1990).
Where the resolution of the jurisdictional issue is intertwined with the merits of the case, the decision on jurisdiction should “await a determination of the merits either by the court on a summary judgment motion or by the fact finder at trial.” Id. at 235-38. Thus, in Gulf Oil Corp. v. Copp Paving Co., 419 U.S. 186, 203 n. 19, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974), the Supreme Court stated that if there was “an identity between the ‘jurisdictional’ issues and certain issues on the merits,” then “under Land v. Dollar, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947), [there would be] no objection to reserving the jurisdictional issues until a hearing on the merits ... [or] to the use, in appropriate cases, of summary judgment procedure to determine whether there is a genuine issue of material fact ... ”. See also Pringle v. United States, 208 F.3d 1220, 1223 (10th Cir.2000) (holding that, because the jurisdictional issues were intertwined with the merits, the district court should have decided the case on summary judgment rather than on a factually-based 12(b)(1) motion to dismiss). We also have recognized this principle. See Spruill v. Merit Sys. Prot. Bd., 978 F.2d 679, 688-89 & n. 12 (Fed.Cir.1992); cf. Lewis v. United States, 70 F.3d 597, 603 (Fed.Cir.1995) (holding that Court of Federal Claims should have treated the dismissal of complaint as a dismissal on the merits rather than on jurisdictional grounds).
We therefore hold that the Court of Federal Claims erred in dismissing the Oswalts’ claims for lack of jurisdiction rather than on their merits. Jurisdiction in the Court of Federal Claims is supplied by the Tucker Act, which limits jurisdiction to “any claim against the United States founded ... upon any express or implied contract with the United States ...” 28 U.S.C. § 1491(a)(1) (1994). In their Amended Complaint, the Oswalts alleged express contracts with the United *473 States based on the “Applications for Water Rights” and their leases. The Oswalts further alleged an implied contract with the United States, that “[b]y virtue of having paid and or made satisfactory arrangements for payment of irrigation assessments, the plaintiffs were entitled to the delivery of their proportionate share of irrigation water provided by the WIP.” Because plaintiffs alleged contracts with the United States, and resolution of the jurisdictional issue of privity of contract under the Tucker Act is intertwined with the merits of the Oswalts’ express and implied breach of contract claims, the Court of Federal Claims should have converted the government’s motion to dismiss for lack of jurisdiction either to a motion under RCFC 12(b)(4) for failure to state a claim, or to a summary judgment matter pursuant to RCFC 56.
Even though the Court of Federal Claims did not follow this path, the court nevertheless provided the parties with a full opportunity to present all pertinent materials outside the pleadings regarding the issue of privity, and the parties created a complete record on the issue. We therefore may now proceed to the question as if on summary judgment. See, e.g., United States v. Sager, 743 F.2d 1261, 1265-66 (8th Cir.1984).
To establish a valid contract (express or implied), the Oswalts must show a mutual intent to contract including an offer, an acceptance, and consideration. Trauma Serv. Group, 104 F.3d at 1325; City of El Centro v. United States, 922 F.2d 816, 820 (Fed.Cir.1990). An implied-in-fact agreement must be “ ‘founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in light of the surrounding circumstances, their tacit understanding.’ ” Trauma Serv. Group, 104 F.3d at 1326. A contract with the United States also requires that the government representative who entered or ratified the agreement had actual authority to bind the United States. Id. at 1325; City of El Centro, 922 F.2d at 820. It is the Oswalts’ burden to show that the government representative who entered or ratified the agreement had the requisite contracting authority. City of El Centro, 922 F.2d at 820-21.
The Oswalts argue on appeal that their payment or agreement to pay water assessments constituted an express or an implied contract with the United States for the delivery of irrigation water. As evidence, they offered an affidavit from Craig Oswalt stating that (1) in June 1994, he and his father met with A.C. Oberly, the Project Administrator for the Wapato Irrigation Project, Bureau of Indian Affairs; (2) Craig Oswalt and his father offered to pay the balance due for irrigation water for 1994 by executing a promissory note; (3) Oberly orally agreed to the arrangement; and (4) the promissory note was later signed and paid.
This testimony is clearly insufficient to demonstrate even a prima facie showing of an express contract between the Oswalts and the United States for the supply of irrigation water. An express promise to pay delinquent assessments for land owned or leased by another is distinct from an express offer to pay assessments in exchange for irrigation rights. See Trauma Serv. Group, 104 F.3d at 1325 (stating a valid offer is a contractual element on which the plaintiff bears the burden of proof). Instead, we agree with the Court of Federal Claims that the only express contracts with the United States to which the Oswalts were parties were the Applications for Water Rights for the land the Oswalts proved they owned in fee, and the Oswalts’ direct leases with the government for the trust lands.
*474 Similarly, the Oswalts have not offered evidence sufficient to create a genuine issue of material fact concerning the formation of an implied-in-fact contract. With respect to plots of trust land the Oswalts sub-leased, we agree with the Court of Federal Claims that the express lease agreements between the original lessee and the government provided privity of contract only to the original lessee for irrigation rights for these plots. See Oswalt, slip op. at 11. As to fee lands that the Oswalts leased, we agree with the Court of Federal Claims that the express Applications for Water Rights provide privity with the United States for irrigation rights only to the plots’ original owners, heirs and assigns. See Oswalt, slip op. at 8-9.
The applicable regulations, incorporated by reference into the government leases, do not contemplate that an implied contract may be formed under the facts specified by the Oswalts. See Total Med. Mgmt., 104 F.3d at 1319 (“[Government contracts must comply with statutorily sanctioned regulations”); see also City of El Centro, 922 F.2d at 820 (holding that it is the burden of the contracting party to show that the government representative who entered or ratified the agreement had the requisite contracting authority). Rather than authorizing oral applications for water rights on fee lands, 25 C.F.R. § 171.14 (2001) provides that “[t]he Project Engineer is authorized to execute water rights applications submitted by landowners in the project on behalf of the Secretary of the Interior. Such applications should be submitted on the approved Departmental form.” The Oswalts offered no evidence that they were landowners of the disputed fee lots, and no evidence that they submitted applications on the approved form.
As to leases of trust lands, the regulations provide that “[w]ater will not be delivered to Indian trust or restricted lands that are under lease approved by the Secretary of the Interior or his authorized representative acting under delegated authority until the lessee has paid the annual assessed operation and maintenance charges.” 25 C.F.R. § 171.17(b) (2001). The Oswalts have offered no evidence that they are lessees of the relevant trust lands under an approved lease. The regulations further provide that, as a precondition to the delivery of water, the operation and maintenance assessments are to be paid, or payment is to be arranged, in a timely fashion. Id. The Oswalts do not dispute that the operations and maintenance assessments they paid in 1994 were late. Therefore, the Oswalts cannot establish the obligation by the government to deliver water, or consequently, a breach of that obligation.
Because we have determined that the Court of Federal Claims erred in determining that it lacked jurisdiction over this case, we need not consider the Oswalts’ remaining arguments as to jurisdiction.
Finally, we do not reach the Oswalts’ exhaustion claims with respect to the remaining lots because we lack jurisdiction to review them. A stay order “should not ordinarily be viewed ... as ‘final’ and thus within the jurisdiction of an appellate court [unless] ... it effectively puts the parties out of ... court, either permanently because it terminates the action as a practical matter, or, as some courts have held, for a protracted or indefinite period.” Gould v. Control Laser Corp., 705 F.2d 1340, 1341 (Fed.Cir.1983). In Gould, we held that we lacked jurisdiction to review a stay entered by the district court that had been designed to allow the Patent and Trademark Office to proceed with a patent reexamination. Id. Similarly to the dis *475 triet court in Gould, the Court of Federal Claims stayed the present action to allow the Oswalts to exhaust their administrative remedies as to their remaining claims. Therefore, there is no final appealable decision by the Court of Federal Claims as to these claims, and we lack jurisdiction to review them.
No costs.

. Relating to Lots 299, 300, 596, 766, 848, 849, 850, 289, T-290, 1752, T-1131.5B, T-2661A, T-2482, 2482, 1013A, 263 and T-263.