Joseph MARTIN, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 97–584 C.

United States Court of Federal Claims.

April 28, 1998.

Joseph Martin, Jersey City, NJ, pro se.

Lisa B. Donis, Washington, DC, with whom were Assistant Attorney General Frank W. Hunger, Director David M. Cohen, and Deputy Director Kathryn A. Bleecker, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge.

This case is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction, filed pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims. Plaintiff, formerly an employee of the Federal Bureau of Prisons, brought this civilian pay action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219 (1994 & Supp. I 1995), seeking compensation for sick leave, regular time and overtime pay. For the reasons set forth below, the court allows defendant's motion to dismiss.

### BACKGROUND [1]

Plaintiff, as a former employee of the Federal Bureau of Prisons ("BOP"), worked as a

1. Defendant has accepted as true, for the pur- poses of its present motion, the factual allega-

correctional officer at the Metropolitan Correctional Center in New York, New York ("MCC–NY") from March 8, 1992 until his resignation on July 25, 1996. Plaintiff's employment was governed by a collective bargaining agreement ("the Master Agreement") between the BOP and the American Federation of Government Employees, Council of Prison Locals. (Master Agreement at 1.)[2] Plaintiff alleges that during his period of employment, defendant improperly withheld certain sick leave, regular time, and overtime pay.

On May 3, 1996, plaintiff submitted a memorandum (dated April 15, 1996 by plaintiff) to the Human Resource Management office at the MCC–NY, listing approximately sixteen incidents for which plaintiff claims compensation is owed to him for overtime and regular leave pay, and for alleged improper deductions for being classified as absent without official leave ("AWOL").[3] On June 13, 1996, a memorandum was received by plaintiff from the manager of the Human Resource Management office, which included detailed responses to each of plaintiff's claims. The replies ranged from that the agency had no record of either overtime or requests for sick leave (when plaintiff was listed as AWOL), to that the agency had already paid or will pay plaintiff the compensation requested.

On August 25, 1997, plaintiff filed a claim in this court seeking the same (and additional) sick leave, overtime, and regular time pay, alleging that even as to the compensation for which the agency said it had paid, plaintiff was still owed all of the listed pay. On December 22, 1997, defendant filed a motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction, alleging that section 7121 of the Civil Service Reform Act ("CSRA") precludes plaintiff from seeking review of his claims outside of the exclusive grievance procedures for resolving FLSA

disputes under the applicable collective bargaining agreement. 5 U.S.C. § 7121 (1994). For the reasons set forth below, the court allows defendant's motion.

## DISCUSSION

### I. Motion to Dismiss

 In considering defendant's motion to dismiss for lack of subject matter jurisdiction, the court must accept as true any undisputed allegations of fact made by the non-moving party. *See Reynolds v. Army and Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988). The non-moving party then bears the burden of establishing jurisdiction. *See id.* at 748. Only contested facts relevant to subject matter jurisdiction must be decided by the court. *See id.* at 747. Although the court must generally assume the truth of unchallenged facts when deciding its jurisdiction, the court is not required to accept plaintiff's framing of the complaint. *Lewis v. United States,* 32 Fed.Cl. 301, 304 (1994) (citations omitted), *aff'd,* 70 F.3d 597 (Fed. Cir.1995). Rather, the court should look to plaintiff's factual allegations to ascertain the true nature of the claims, as well as matters outside the pleadings. *Lewis,* 32 Fed.Cl. at 304 (citations omitted). The sole issue to be resolved is whether this court's jurisdiction is precluded as a result of the CSRA's limitation of forums for the resolution of grievances covered by collective bargaining agreements.

### II. The Civil Service Reform Act

In his capacity as a correctional officer at the MCC–NY, plaintiff was covered by a collective bargaining agreement, which applies to "all employees, Class Act, Wage Board, and professional, employed in any facility or operation of the Federal Bureau of

---

tions set forth in plaintiff's complaint. (*See* Def.'s Mot. to Dismiss at 1 n. 2.)

2. The entire Master Agreement was filed by defendant as part of the appendix to its Motion to Dismiss. For purposes of clarity, the court will refer to the relevant pages of the actual Master Agreement.

3. Defendant claims that there is no record that plaintiff ever filed a grievance against the agen-

cy. (Def.'s Mot. to Dismiss at 3.) Plaintiff, on the other hand, cites his May 3, 1996 (dated April 15, 1996 by plaintiff) memorandum as "clearly" being a grievance and also his attempt to resolve the issues with the agency. (Pl.'s Resp. to Def.'s Mot. to Dismiss at 2.) Whether or not plaintiff's memorandum is a formal grievance is irrelevant to the court's analysis and conclusion.

Prisons."[4] (Master Agreement at 2). Section 7121(a)(1) of the CSRA requires that such collective bargaining agreements contain procedures to address "grievances," which are defined in the CSRA as "any complaint—(A) by any employee concerning any matter relating to the employment of the employee [.]" 5 U.S.C. § 7103(a)(9) (1994). The CSRA further provides that such procedures are to be the exclusive method for resolving grievances:

> Except as provided in paragraph (2) of this subsection, any collective bargaining agreement shall provide procedures for the settlement of grievances, including questions of arbitrability.... [T]he procedures shall be the exclusive administrative procedures for resolving grievances which fall within its coverage.

5 U.S.C. § 7121(a)(1) (1994). Paragraph (2) of the same subsection provides that "[a]ny collective bargaining agreement may exclude any matter from the application of the grievance procedures which are provided for in the agreement." 5 U.S.C. § 7121(a)(2) (1994).

In *Carter v. Gibbs*, 909 F.2d 1452, 1454–58 (Fed.Cir.1990) (in banc), the Federal Circuit held that section 7121(a)(1) of the CSRA made grievance procedures in bargaining agreements the exclusive method for resolving employee claims unless, as permitted by section 7121(a)(2), the agreement itself provides otherwise. *Carter* therefore concluded that the CSRA's exclusivity provision precluded the plaintiffs in that case from obtaining judicial review of their overtime pay claims. *Id.* In so holding, the court observed that Congress, through the CSRA, " 'comprehensively overhauled the civil service system,' " *id.* at 1455 (quoting *Lindahl v. OPM*, 470 U.S. 768, 773, 105 S.Ct. 1620, 1624, 84 L.Ed.2d 674 (1985)), and "narrowly circumscribed the role of the judiciary in its carefully crafted civil service scheme," *Carter*, 909 F.2d at 1456. Because Congress in the CSRA only provided for administrative remedies for federal employees' claims covered by collective bargaining agreements, the

court declined to supplement such remedies with access to the courts. *Id.* at 1454–58.

In *Muniz v. United States*, 972 F.2d 1304, 1309, 1312–13 (Fed.Cir.1992), the court reaffirmed and expounded upon *Carter* with the holding that claims of a retired employee, or an employee whose employment status had changed in some way, which arose during the employee's period of employment while subject to a collective bargaining agreement, were also limited to the grievance procedures in the agreement. *See Sample v. United States*, 65 F.3d 939, 941 (Fed.Cir.1995); *Aamodt v. United States*, 976 F.2d 691, 692 (Fed.Cir.1992). In other words, the claims of a retired employee, for example, which arose during employment remained "grievable" under the agreement even after retirement. *Muniz*, 972 F.2d at 1313. Finally, in *Muniz*, the court reiterated *Carter's* admonition that if a certain claim is to be removed from the grievance and arbitration processes, that removal must be the "explicitly and unambiguously declared intention of the parties." *Id.* at 1313. Therefore, the applicable agreement must be studied in detail to determine whether a particular claim was intended to be excluded from the grievance procedures. *See id.* at 1310–13.

In determining whether this court's jurisdiction over plaintiff's claims is precluded as a result of section 7121(a)(1) of the CSRA, therefore, *Carter* and its progeny essentially require three inquiries: (1) is plaintiff "covered" by a collective bargaining agreement; (2) if so, is his dispute "grievable;" and (3) does the agreement explicitly exclude such a dispute from its coverage? *See, e.g., Moore v. United States*, 21 Cl.Ct. 537, 542 (1990). Plaintiff does not dispute that he was covered by the Master Agreement during his employment. In his response to defendant's motion to dismiss, plaintiff acknowledges his union membership and his attempt to initiate the agreement's grievance procedures. (*See* Pl.'s Resp. to Def.'s Mot. to Dismiss at 2.) While plaintiff's

---

**4.** The Agreement specifically excludes certain employees, and not Mr. Martin, from its coverage, including "management officials," "supervisors," those involved in formulating or effectuating labor-management policies, those involved in personnel matters and those involved in administering the CSRA. (*Id.*)

attempt to file a grievance was apparently not interpreted as a formal grievance by the agency, his acknowledgment of the process affirms that he is covered by the agreement.

Second, defendant argues, and plaintiff does not disagree, that the dispute is "grievable." As stated above, *Muniz* held that whether a claim is grievable depends upon when the claim arose, and not the claimant's present employment status. *See Muniz*, 972 F.2d at 1312–13. In this case, while plaintiff is no longer employed by the BOP, his various claims arose between July, 1993 and July, 1996. Plaintiff was employed as a correctional officer with the MCC–NY from March 8, 1992 to July 25, 1996. Therefore, plaintiff's claims arose from his period of employment when he was subject to the collective bargaining agreement and are clearly "grievable." [5]

Third, the court must determine whether the agreement explicitly excludes from its grievance procedures the claims being made by plaintiff. Defendant argues in its motion to dismiss that "[t]he Master Agreement does not exclude claims for compensation, overtime, or sick leave benefits from the grievance procedure[s]." (Def.'s Mot. to Dismiss at 6.) Plaintiff does not specifically address this aspect of the analysis in its response. The court has carefully examined the Master Agreement, and agrees with defendant that such agreement does not "explicitly" or "unambiguously" exclude plaintiff's claims from its coverage. First, the grievance procedures cover "all grievances properly grievable under 5 U.S.C. 7121." (Master Agreement at 36.) Pay matters are inherently a "matter relating to the employment of the employee" within the CSRA's definition of a "grievance." *See* 5 U.S.C. § 7103(a)(9) (1994). In addition, pay matters are clearly referenced in and covered by the agreement. (Master Agreement at 29 (regular pay), 23–24 (overtime pay), and 26–28

(sick leave).) Moreover, plaintiff has not identified, nor can the court locate, any provision excluding such pay matters from the coverage of the grievance procedures in the agreement. As a result of plaintiff's claims being covered by, and not excluded from, the grievance procedures in the Master Agreement, such procedures are the exclusive method of resolving plaintiff's claims. Therefore, this court cannot exercise jurisdiction over such claims.

As a final note, the court recognizes plaintiff's argument in his response to defendant's motion to dismiss that this court must exercise jurisdiction over his claim because his attempts to pursue the matter by grievance had resulted in "the agency disagree[ing] with [his] claim," and "the union refus[ing] to process the claim to arbitration." (Pl.'s Resp. to Def's Mot. to Dismiss at 2.) Plaintiff additionally states that his "only course" is to pursue his action in this court, and that because the Court of Federal Claims "exists for the purpose of deciding when the federal government should compensate" plaintiffs, he sees "no reason why the [c]ourt cannot entertain this matter and make a just decision." (*Id.*) While plaintiff may object to his being limited as to the forums to bring his claims, this court cannot extend its jurisdiction, "even in the interest of justice," where none exists in the first place. *Adams v. United States*, 979 F.2d 840, 843 (Fed.Cir.1992) (affirming the trial court's dismissal for lack of jurisdiction, in accordance with CSRA section 7121(a)(1), of pay claims covered by grievance procedures even though the effect of the dismissal was to leave plaintiffs without any forum to bring their claims) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818, 108 S.Ct. 2166, 2178–79, 100 L.Ed.2d 811 (1988)). Therefore, plaintiff's complaint cannot be entertained by this court.

---

**5.** The original Master Agreement was in effect from September 1, 1992 through August 31, 1995. Defendant represented in its motion to dismiss, and plaintiff did not dispute, that "a new Master Agreement is currently in negotiation," and that "pursuant to the Master Agreement, Article 37, section b, the 1992–1995 agreement remains in full force." (Def.'s Mot. to Dismiss at

6 n. 5.) Article 37, section b of the original Master Agreement provides for the automatic extension of the Agreement until a new Agreement is approved, and/or for the extension of the Agreement in one year increments by the mutual agreement of the parties. (Master Agreement at 41.)

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss for lack of subject matter jurisdiction is allowed. The Clerk is directed to dismiss the complaint. No costs.

**IT IS SO ORDERED.**