Lawrence ABRAMSON, et al., Plaintiffs,

v.

UNITED STATES, Defendant.

Nos. 96–480C, 96–4801C.

United States Court of Federal Claims.

Dec. 16, 1998.

Elaine Kaplan, National Treasury Employees Union, Washington, D.C., attorney of record for plaintiffs. Gregory O'Duden, National Treasury Employees Union, Washington, D.C., and Larry J. Adkins, National Treasury Employees Union, Washington, D.C., of counsel.

Leslie Caver Ohta, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., with whom were Sharon Y. Eubanks, Deputy Di-

rector, Commercial Litigation Branch, David M. Cohen, Director, Civil Division, and Frank W. Hunger, Assistant Attorney General, attorneys of record for defendant. Karen E. Makkreel, Office of Associate Chief Counsel, Department of Treasury, United States Customs Service, of counsel.

## OPINION

HORN, Judge.

### FACTS

The plaintiffs in these cases are 1008 former or current employees of the United States Customs Service, United States Department of the Treasury.[1] Most are employed as customs inspectors or import specialists, with the remainder holding one of several other positions.[2] They allege that, beginning as early as August 27, 1989, the defendant illegally failed to pay overtime wages at the rate required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C.A. §§ 201–219 (West 1994 & Supp.1998), and instead paid them at a lower Federal Employment Pay Act ("FEPA") rate set forth in 29 U.S.C. § 5542(a)(2) (1994), which is "capped" at one and one-half times the rate of a grade GS–10 step 1 employee.

According to the complaint, the United States, acting through the United States Customs Service, is a public agency as defined by the FLSA and is the employer of the listed plaintiffs.[3] Since 1974, non-exempt employees of the federal government have been covered by the FLSA, while exempt employees are covered by the FEPA. Plaintiffs' complaint appears to allege that each of the plaintiffs in the case is a non-exempt employee. The complaint states that each plaintiff receives a salary above that of a grade GS–10, step 1 employee, and that each worked a significant number of overtime hours since 1988, some of which were hours not compensated in accordance with the FLSA.

Plaintiffs allege that the Customs Service has refused to pay them for overtime at the FLSA rate because the defendant has identified them as "administrative" employees exempt from the FLSA pursuant to 29 U.S.C. § 213(a)(1). According to the plaintiffs, "[t]he wrongful FLSA exemption has resulted in [their] being compensated at the 'capped' time-and-a-half overtime rates provided for by the [FEPA], instead of at the more generous 'true' time-and-a-half overtime rates required by the FLSA." Furthermore, "[t]he wrongful FLSA exemption may have also resulted in plaintiffs being denied appropriate FLSA overtime compensation for work-related travel and for overtime for which they earned 'compensatory time' under FEPA." Plaintiffs contend that the defendant either knew that its exemption of plaintiffs from the FLSA was unlawful, or that it acted with reckless disregard for the Act's requirements.

Prior to filing an answer to the plaintiffs' complaint in this case, defendant moved for dismissal of the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC). Defendant argues that until May 19, 1991, the plaintiffs were covered by a collective bargaining agreement that did not exclude FLSA pay claims from its negotiated grievance procedure. The defendant, citing a decision by the United States Court of Appeals for the Federal Circuit in *Carter v. Gibbs*, 909 F.2d 1452 (en banc), *cert. denied*, 498 U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990), asserts that employees who were covered by a collective bargaining agreement that did not specifically exclude overtime pay disputes from its

---

1. The total number of plaintiffs is based on those named by the "Joint Submission in Response to Order" which the parties filed on January 9, 1998.

2. These other positions are vessel entry and clearance specialist, entry specialist, entry officer, seized property specialist or custodian, paralegal specialist, mail specialist, operational analysis specialist, canine enforcement officer, and vessel entry aid.

3. The FLSA defines "employer" in 29 U.S.C. § 203(d) as:

 any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

grievance provisions are precluded from bringing suit for that pay under the FLSA. According to the defendant, under *Carter v. Gibbs* and a provision of the Civil Service Reform Act (CSRA),[4] 5 U.S.C. § 7121(a), plaintiffs' access to the federal courts in such situations is precluded.[5]

The plaintiffs counter that CSRA § 7121(a) was amended in 1994 to read "procedures shall be the exclusive *administrative* procedures" rather than "procedures shall be the exclusive procedures" (emphasis added.) Plaintiffs argue that the absence of the word "administrative" had been the basis for *Carter's* conclusion that employees covered by collective bargaining agreements could not judicially enforce the FLSA if violations of that statute were subject to negotiated grievance procedures. Plaintiffs assert that the amendment demonstrates congressional intent to give parties in their situation access to the courts in addition to their possible administrative remedies, effectively overturning the decision in *Carter v. Gibbs.*

The plaintiffs seek relief pursuant to FLSA section 216(b) for the amount of the alleged unpaid portion of their overtime pay, liquidated damages, and payment of attorney fees and costs. The above-captioned case comes before the court on the defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1).

---

**4.** 5 U.S.C.A. §§ 7101–35 (West 1994 & Supp. 1998).

**5.** Defendant's motion to dismiss also contained two other arguments which have subsequently been mooted or abandoned. First, defendant contended that the complaint was deficient in light of 29 U.S.C. § 21 6(b), which states that an action under the FLSA only can be maintained by a plaintiff upon behalf of other employees within an organization if the other employees are "similarly situated" to the plaintiff employee. This argument has been mooted by the parties' agreement to sever the case into two groups of related plaintiffs (inspectors in one group, Case No. 96–480C, and all others in a second group, Case No. 96–4801 C), and to consolidate those two cases.

Second, defendant contended that the 1994 amendment to § 7121 should not have applied here and that all claims which arose prior to the effective date of the amendment were governed by the previous version of the statute. At oral argument, the government stated that it had decided not to pursue this argument, and the government later confirmed this change of position in a Notice to the Court filed October 27, 1997, which states:

the following argument made in Defendant's Reply Brief, filed on or about June 10, 1997, will not be pursued:

Even assuming the 1994 amendment to 5 U.S.C. Section 7121(a) overruled *Carter v. Gibbs,* 909 F.2d 1452 (Fed.Cir.) (*en banc* ) *cert. denied sub. nom. Carter v. Goldberg,* 498 U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990), this Court does not have subject matter jurisdiction over the Plaintiffs' causes of action which accrued on or before May 18, 1991 (the last day on which the collective bargaining agreement covered FLSA claims) because the amendment at issue does not have retroactive application. Br. pp. 5–7.

The court notes that, even had the government decided to pursue this argument, United States Supreme Court precedent suggests that applica-

tion of the amended version of § 7121(a) is proper in this case. In *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the Court described the appropriate analytical process which should be used when determining whether to apply a statute to conduct which occurred prior to the statute's enactment:

When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.,* whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Id.* at 280, 114 S.Ct. 1483.

Without an express congressional statement as to whether amended section 7121(a) should apply to claims which arose before its enactment, use of the *Landgraf* framework would call for a retroactivity determination in this case. Amended section 7121(a) neither impairs plaintiffs' prior rights nor creates new ones which would expose the defendant to greater liability. Additionally, no new duties have been created with respect to the payment of overtime. The amendment simply opens up a new forum for the plaintiffs to bring the same currently-existing claims. Thus, it is clear that applying the amendment would not have any retroactive effects as defined by the Supreme Court and would not implicate the concerns-fairness, foreseeability and protection of settled expectations-which form the basis of the presumption against retroactivity. *See id.* at 265, 114 S.Ct. 1483.

## DISCUSSION

The defendant has filed a motion to dismiss pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction. When considering a motion to dismiss, the court may consider all relevant evidence in order to resolve any disputes as to the truth of the jurisdictional facts alleged in the complaint. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988). The court is required to decide any disputed facts which are relevant to the issue of jurisdiction. *Id.*

The standard for weighing the evidence presented by the parties when evaluating a motion to dismiss for lack of jurisdiction, pursuant to RCFC 12(b)(1), and/or a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(4), as in the instant case, has been articulated by the United States Supreme Court, as follows: "in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *accord Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989); *see also Alaska v. United States*, 32 Fed.Cl. 689, 695 (1995), *appeal dismissed*, 86 F.3d 1178 (Fed.Cir.1996). In rendering a decision, the court must presume that the undisputed factual allegations included in the complaint by a plaintiff are true. *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d at 746; *Alaska v. United States*, 32 Fed.Cl. at 695.

The burden of establishing jurisdiction is on the plaintiff. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Alaska v. United States*, 32 Fed.Cl. at 695; *Catellus Dev. Corp. v. United States*, 31 Fed.Cl. 399, 404 (1994). The court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). Nonetheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

In order for this court to have jurisdiction over plaintiff's complaint, the Tucker Act, as amended, 28 U.S.C.A. § 1491 (West 1994 & Supp.1998), requires that a substantive right, which is enforceable against the United States for money damages, must exist independent of 28 U.S.C. § 1491. The Tucker Act provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Tucker Act merely confers jurisdiction on the United States Court of Federal Claims; it does not create a substantive right that is enforceable against the United States for money damages. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607, *reh'g denied*, 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *United States v. Testan*, 424 U.S. 392, 398–99, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. Connolly*, 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).

Moreover, a waiver of the traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969) (citing *United States v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). The individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Testan*, 424 U.S. at 398, 96 S.Ct. 948. "[I]n order for a claim against the United States founded on statute or regulation to be successful, the provisions relied upon must contain language which could fair-

ly be interpreted as mandating recovery of compensation from the government." *Cummings v. United States,* 17 Cl.Ct. 475, 479 (1989), *aff'd,* 904 F.2d 45 (Fed.Cir.1990) (citations omitted); *see also United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (citing *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. 948 (quoting *Eastport S. S. Corp. v. United States,* 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967))); *Duncan v. United States,* 229 Ct.Cl. 120, 138, 667 F.2d 36, 47 (1981), *cert. denied,* 463 U.S. 1228, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983).

The plaintiffs' claim has its foundation in the FLSA overtime provision which states that:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). The FLSA allows covered federal employees [6] to seek damages for unpaid compensation in courts with competent jurisdiction. *See* 29 U.S.C. § 216(b) (1994).[7]

There are, however, specifically listed exemptions to the FLSA section 207 overtime provision. In pertinent part, 29 U.S.C. § 213(a)(1) provides that the provisions of section 207 do not apply to "any employee employed in a bona fide executive, adminis-

trative, or professional capacity, ... or in the capacity of outside salesman...." If an employee is exempt from the FLSA, that employee will be compensated for overtime work under the FEPA rate set forth in 29 U.S.C. § 5542(a) (1994). Section 5542(a) states:

> (1) For an employee whose basic pay is at a rate which does not exceed the minimum rate of basic pay for GS–10 ..., the overtime hourly rate of pay is an amount equal to one and one-half times the hourly rate of basic pay of the employee, and all that amount is premium pay.

> (2) For an employee whose basic pay is at a rate which exceeds the minimum rate of basic pay for GS–10 ..., the overtime hourly rate of pay is an amount equal to one and one-half times the hourly rate of the minimum rate of basic pay for GS–10 ... and all that amount is premium pay.

In addition to the FLSA, the Civil Service Reform Act (CSRA) also governs federal employees who are represented by a union. *See Dunklebarger v. Merit Systems Protection Board,* 130 F.3d 1476, 1478 (Fed.Cir.1997). CSRA section 7121(a)(1) "requires that collective bargaining agreements with federal agencies contain negotiated grievance procedures, and it contemplates that in most cases the negotiated grievance procedures will be the exclusive means of resolving employment disputes." *Id.* In *Sample v. United States,* 65 F.3d 939 (Fed.Cir.1995), the court wrote that a collective bargaining agreement requiring arbitration of disputes through a grievance procedure provides "the only mechanism for settlement of the employment claims of an employee who was a member of the collective bargaining unit at the time the

---

**6.** *See* 29 U.S.C.A. § 203(e)(2) (West 1994 & Supp.1998) (defining employees of public agencies who are, in turn, within the scope of the FLSA).

**7.** 29 U.S.C. 216(b) provides that:
Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any

court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action....

claim accrued." *Id.* at 940. The statute does, however, allow the parties to the collective bargaining agreement to specifically exclude any matters from the grievance procedures if they so choose. 5 U.S.C. § 7121(a)(2); *Dunklebarger v. Merit Systems Protection Board,* 130 F.3d at 1478.

Prior to 1994, CSRA section 7121(a) read as follows:

(a)(1) Except as provided in paragraph (2) of this subsection, any collective bargaining agreement shall provide procedures for the settlement of grievances, including questions of arbitrability. Except as provided in subsections (d) and (e) of this section, the procedures shall be the exclusive procedures for resolving grievances which fall within its coverage.

(2) Any collective bargaining agreement may exclude any matter from the application of the grievance procedures which are provided for in the agreement.

5 U.S.C. § 7121(a) (1988). In 1994, however, the statute was amended by section 9(c) of United States Office of Special Counsel, Merit Systems Protection Board: Authorization, Pub.L. No. 103–424, 108 Stat. 4361 (codified in scattered sections of 5 U.S.C. and 12 U.S.C.). As amended, section 7121(a) now provides that "the [negotiated grievance] procedures shall be the exclusive *administrative* procedures for resolving grievances which fall within its coverage." 5 U.S.C. § 7121(a)(1) (1994) (emphasis added).[8]

To rule on defendant's motion to dismiss in this case, the single question which must be answered is whether the amended version of CSRA section 7121 allows the plaintiffs to bring their FLSA overtime pay claims before this court.[9] The case upon which the government relies is an opinion of the United States Court of Appeals for the Federal Circuit in *Carter v. Gibbs,* 909 F.2d at 1452–58. The court in *Carter v. Gibbs* held that, under the earlier version of CSRA § 7121, negotiated grievance procedures in collective bargaining agreements were the exclusive method for resolving FLSA disputes unless the agreement specifically provided otherwise. *See* 909 F.2d at 1458. The Federal Circuit stated:

The Civil Service Reform Act is unambiguous: "the procedures [set out in the collective bargaining agreement] shall be the exclusive procedures for resolving grievances which fall within its coverage." 5 U.S.C. § 7121(a)(1). There is no dispute that overtime claims, premised on an alleged violation of section 7 of the FLSA, 29 U.S.C. § 207, are "grievances" subject to the negotiated procedures. See 5 U.S.C. § 7103(a)(9)(C)(ii).

*Carter v. Gibbs,* 909 F.2d at 1454 (footnote omitted).

From August 27, 1987, until May 19, 1991, the plaintiffs in the cases at bar were covered by a collective bargaining agreement containing grievance procedures "concerning any matter relating to the employment of any employee." Nat'l Agreement Between Nat'l Treasury Employees Union and U.S. Customs Serv., August 24, 1987 ("the 1987 Agreement"), art. 31, § 3(a). The grievance procedures also covered "any claimed violation, misinterpretation, or misapplication of any law, rule or regulation affecting conditions of employment." *Id.* at art. 31, § (c)(2). The 1987 agreement did not explicitly exclude FLSA overtime claims from the grievance process.[10] Therefore, defendant points

---

**8.** In addition to the mandate that "the procedures shall be the exclusive administrative procedures," another exception, in a new subsection (g), was added to the list of exceptions previously dictated by subsections (d) and (e). *See* 5 U.S.C. § 7121(a)(1), (d), (e), (g) (1994). None of the exceptions in subsections (d), (e) and (g) are applicable to the plaintiffs in these cases.

**9.** Section 7121 was amended in 1994, and the claims in dispute in the above captioned cases arose prior to the amendment's passage by Congress. However, as noted earlier, defendant

does not contest that the current version of the CSRA should apply.

**10.** The 1987 agreement was superseded on May 19, 1991, by an agreement ("the 1991 Agreement") which explicitly excludes FLSA overtime claims from the grievance procedures for the plaintiffs. Thus, since May 19, 1991, the CSRA has no longer governed their disputes concerning overtime compensation, *see* 5 U.S.C. § 7121(a)(2), and any of plaintiffs' claims which arose exclusively on or after May 19, 1991, are not at issue in the decision on this motion to dismiss. The 1991 Agreement, however, did not

out that under the interpretation of the CSRA's effect on FLSA claims in *Carter v. Gibbs,* the grievance procedures provided for by the 1987 agreement should be the exclusive remedy for these claims.

Due to the amendment of 5 U.S.C. § 7121(a)(1) in 1994, however, the plaintiffs here contend that Congress reversed the result of *Carter v. Gibbs.* Since the statute now says that the negotiated grievance procedures are to be the "exclusive administrative remedy," rather than simply the "exclusive remedy," plaintiffs argue that the CSRA no longer blocks their access to judicial remedies for their FLSA overtime claims. They assert that the plain language of the amended statute and the legislative history of the amendment support their interpretation.

 This court's interpretation of the amended CSRA section 7121(a)(1), must be resolved in accordance with accepted rules of statutory construction. Guidance for statutory construction has been offered by the United States Court of Appeals for the Federal Circuit, as follows:

> Statutory construction requires the application of recognized rules. *See generally Sutherland Statutory Construction* (4th ed.). First, "[t]he starting point in every case involving construction of a statute is language itself." *Greyhound Corp. v. Mt. Hood Stages, Inc.,* 437 U.S. 322, 330, 98 S.Ct. 2375, 27 L.Ed.2d 239[sic] [57 L.Ed.2d 239] (1978). Second, where a statute states what a term 'means' then all other meanings not stated are excluded. *Colautti v. Franklin,* 439 U.S. 379, 392 n. 10, 99 S.Ct. 675, 684, n. 10, 58 L.Ed.2d 596 (1979). Third, clear evidence of legislative intent prevails over other principles of statutory construction. *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974). Fourth, absent a very clear legislative intent, the plain meaning will prevail. *Aaron v. SEC,* 446 U.S. 680, 697, 100 S.Ct. 1945, 1956, 64 L.Ed.2d 611 (1980). Last, "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-

enacts a statute without change." *Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978); *National Lead Co. v. United States,* 252 U.S. 140, 146–47, 40 S.Ct. 237, 239, 64 L.Ed. 496 (1920); *Farrell Lines, Inc. v. United States,* 499 F.2d 587, 605, 204 Ct.Cl. 482 (1974); *cf. Pierce v. Underwood,* [487] U.S. [552], 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

*Johns–Manville Corp. v. United States,* 855 F.2d 1556, 1559 (Fed.Cir.1988), *cert. denied,* 489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989). Thus, if a statute is plain and unequivocal on its face, there is no need to resort to the legislative history underlying the same statute. *Reid v. Department of Commerce,* 793 F.2d 277, 281 (Fed.Cir.1986) (citing *United States v. Oregon,* 366 U.S. 643, 648, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961), *reh'g denied,* 368 U.S. 870, 82 S.Ct. 24, 7 L.Ed.2d 70 (1961)). A court should resort to legislative history only if:

> a literal interpretation would lead to an incongruous result. For example, if a literal reading of the statute would impute to Congress an irrational purpose, *United States v. Bryan,* 339 U.S. 323, 338, 70 S.Ct. 724, 734, 94 L.Ed. 884 (1950), or would thwart the obvious purposes of the statute, *Trans Alaska Pipeline Rate Cases,* 436 U.S. 631, 643, 98 S.Ct. 2053, 2061, 56 L.Ed.2d 591 (1978), or would lead to a result at variance with the policy of the legislation as a whole, *Trustee[s] of Indiana University v. United States,* 618 F.2d 736, 739, 23 Ct.Cl. 88, 94[sic] [223 Ct.Cl. 88, 94] (1980), then literal interpretation will be eschewed in favor of resort to the legislative history to ascertain the intent of Congress. *United States v. Oregon,* 366 U.S. at 648, 81 S.Ct. at 1281; 2A Sands § 46.07.

*Reid v. Department of Commerce,* 793 F.2d at 281–82. Accepted principles of statutory construction also provide that the courts must interpret a statute as a whole. *Massachusetts v. Morash,* 490 U.S. 107, 115, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989). To this

address remedies for claims that arose while the 1987 agreement was in effect.

effect, the United States Supreme Court has written:

> On numerous occasions we have noted that " ' " '[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.' " ' " *Kelly v. Robinson,* 479 U.S. 36, 43, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), quoting *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 221, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986) (quoting *Mastro Plastics Corp. v. NLRB,* 350 U.S. 270, 285, 76 S.Ct. 349, 100 L.Ed. 309 (1956) (in turn quoting *United States v. Heirs of Boisdore,* 8 How. 113, 122, 12 L.Ed. 1009 (1850))).

*Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 51, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *see* Sutherland Stat. Const. §§ 46.05, 46.06 (5th ed.1992). Otherwise stated, courts must " 'give effect, if possible, to every clause and word of a statute,' " *United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955) (quoting *Inhabitants Montclair Township v. Ramsdell,* 107 U.S. 147, 152, 2 S.Ct. 391, 27 L.Ed. 431 (1883)), for " '[t]he cardinal principle of statutory construction is to save and not to destroy.' " *Id.* (quoting *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 30, 57 S.Ct. 615, 81 L.Ed. 893 (1937)).

▪ In construing a statute, courts should not attempt to interpret a provision such that it renders other provisions of the same statute inconsistent, meaningless, or superfluous. *Boise Cascade Corp. v. United States EPA,* 942 F.2d 1427, 1432 (9th Cir. 1991); *see* Sutherland Stat. Const. § 46.06 (5th ed.1992). The meaning of statutory language depends on context, and a statute should be read as a whole. *Bailey v. United States,* 516 U.S. 137, 145, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995); *King v. Saint Vincent's Hosp.,* 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991) (citing *Shell Oil Co. v. Iowa Dept. of Revenue,* 488 U.S. 19, 26, 109 S.Ct. 278, 102 L.Ed.2d 186 (1988)). "Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used." *King v. Saint Vincent's Hosp.,* 502 U.S. at 221, 112 S.Ct. 570 (quoting *NLRB v. Federbush Co.,* 121 F.2d 954, 957 (2d Cir.1941) (L.Hand, J.)). Therefore, when reviewing the statute at issue in this case, the court must construe each section of the statute in connection with each of the other sections, so as to produce a harmonious whole.

The amended version of 5 U.S.C. § 7121(a)(1)(1994) states:

> (a)(1) Except as provided in paragraph (2) of this subsection, any collective bargaining agreement shall provide procedures for the settlement of grievances, including questions of arbitrability. Except as provided in subsections (d), (e), and (g) of this section, the procedures shall be the exclusive *administrative* procedures for resolving grievances which fall within its coverage.
>
> (2) Any collective bargaining agreement may exclude any matter from the application of the grievance procedures which are provided for in the agreement.

(emphasis added.) As the above captioned cases involve construction of section 7121, the court must first look to the language of the amendment itself. *See Greyhound Corp. v. Mt. Hood Stages, Inc.,* 437 U.S. at 330, 98 S.Ct. 2370. In examining the language, if the statute states the "meaning" of a term, then all unstated meanings are excluded. *Colautti v. Franklin,* 439 U.S. at 392 n. 10, 99 S.Ct. 675. Here, neither CSRA section 7121 nor CSRA definitional section 7103 states an explicit meaning for "administrative," the term at issue. With no evidence of legislative intent in the CSRA regarding the addition of the word "administrative," the court turns to the plain meaning of the term.

▪ Under principles of statutory interpretation, undefined terms in a statute are understood to have their ordinary meaning. *Koyo Seiko Co., Ltd. v. United States,* 36 F.3d 1565, 1571 n. 9 (Fed.Cir.1994). Moreover, the dictionary is accepted as an appropriate source for ascertaining a common meaning. *Id.* Black's Law Dictionary defines "administrative" as follows:

> Connotes of or pertains to administration, especially management, as by managing or

conducting, directing, or superintending, the execution, application or conduct of persons or things. Particularly, having the character of executive or ministerial action. In this sense, *administrative functions or acts are distinguished from such as are judicial.*

Black's Law Dictionary 42 (5th ed.1979) (citations omitted) (emphasis added). In the last sentence, the plaintiffs find strong support for their position. To repeat, where the statute previously stated that the grievance procedures were to be the "exclusive procedures," it now says they are to be the "exclusive *administrative* procedures." 5 U.S.C. § 7121(a)(1) (emphasis added). Employing the plain meaning of the word "administrative," demonstrated above to be distinct from "judicial," leads to the conclusion that, by omission, the grievance procedures are not meant to preclude recourse to judicial procedures. Rather, their exclusivity is limited to the administrative arena. This interpretation is entirely consistent with the long-recognized legal maxim "*expressio unius est exclusio alterius*," meaning that the expression of one thing is the exclusion of the other. *See* Black's Law Dictionary 521 (5th ed.1979).

▇ Additionally, the court is mindful that it must " 'give effect, if possible, to every clause and word of a statute.' " *United States v. Menasche,* 348 U.S. at 538–39, 75 S.Ct. 513 (quoting *Inhabitants of Montclair Township v. Ramsdell,* 107 U.S. at 152, 2 S.Ct. 391). To ignore the presence of the word "administrative" in the amended statute, and decide that Congress intended no

change in the statute by the word's insertion, would be equivalent to saying that the insertion was superfluous and unnecessary. The court is not willing to assume that Congress acted without purpose. Indeed, plaintiffs draw attention to the fact that the court in *Carter v. Gibbs* had previously found the unamended text of section 7121 to be unambiguous. *See Carter v. Gibbs,* 909 F.2d at 1454. If it was already clear and serving its intended purpose, Congress would change it only to effect a different result.

Defendant suggests that the alteration may have been necessary for emphasis. Because amended section 7121 contains subsection (g), which includes both administrative and judicial choices for resolving grievances,[11] defendant argues that "it is not unreasonable to assume that the use of the word 'administrative' in the phrase 'exclusive administrative procedure' was simply to emphasize that unless an aggrieved employee fell within the narrowly defined class of employees covered by subsection (g), that employee had only one administrative remedy, that is, the negotiated grievance procedure." While the accepted rules of statutory construction dictate that the court must interpret the statute as a whole, *Massachusetts v. Morash,* 490 U.S. at 115, 109 S.Ct. 1668, the government's construction argument posed here carries little weight, for the structure of section 7121 indicates no special purpose for the placement of "administrative." As the defendant itself noted in oral argument, the previously-existing exceptions in subsections (d)[12] and (e),[13] neither of which were amend-

---

**11.** 5 U.S.C. § 7121(g) reads in part:

(g)(1) This subsection applies with respect to a prohibited personnel practice other than a prohibited personnel practice to which subsection (d) applies.

(2) An aggrieved employee [under this subsection] may elect not more than one of the remedies described in paragraph (3) with respect thereto. . . .

(3) The remedies described in this paragraph are as follows:

(A) An appeal to the Merit Systems Protection Board under section 7701.

(B) A negotiated grievance procedure under this section.

(C) Procedures for seeking corrective action under subchapters II and III of chapter 12.

**12.** Subsection (d) of 5 U.S.C. § 7121 provides that:

(d) An aggrieved employee affected by a prohibited personnel practice under section 2302(b)(1) of this title which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both.

. . . .

**13.** Subsection (e) of 5 U.S.C. § 7121 states:

(e)(1) Matters covered under sections 4303 and 7512 of this title which also fall within the coverage of the negotiated grievance procedure may, in the discretion of the aggrieved employee, be raised either under the appellate procedures of section 7701 of this title or under the negotiated grievance procedure, but not both.

ed in 1994, both offer a choice between appellate and administrative remedies in the same way as new subsection (g). Thus, subsection (g) could not have created any new need for emphasis in 7121(a).[14]

*Carter v. Gibbs* similarly contradicts the defendant's premise by stating that, "[s]ubsections (d) and (e) give employees a choice of resolving certain specified types of disputes either through the negotiated grievance procedures or through alternative administrative, and in some cases judicial, channels." 909 F.2d at 1453. While consistent with the immediately preceding analysis, this language also leads to another line of reasoning which undermines defendant's argument. Before the 1 994 amendment, according to the language from *Carter v. Gibbs*, Congress required an election of either a judicial or administrative remedy when a plaintiff was excepted from subsection (a) by subsection (d) or (e). When not within those exceptions, the grievance procedures were the "exclusive procedures" available to the plaintiff for redress. Currently, amended section 7121 still requires the same election of remedies if a plaintiff is excepted under previous subsection (d) or (e), or new subsection (g). But, the additional change by which the statute now reads "exclusive administrative procedures" is indicative of a congressional intent now to allow access to both types of remedies, rather than one or the other, as long as a plaintiff is not excepted.[15] While cognizant of the precedential authority of Federal Circuit opinions on the decisions of the Court of Federal Claims, the court respectfully believes that the language in *Carter v. Gibbs* does not resolve the issues presently under consideration simply because, in that case, the Federal Circuit was interpreting the pre-amendment version of section 7121(a).[16]

When a statute is straightforward, there is no reason to resort to legislative history. *United States v. Gonzales,* 520 U.S. 1, 117 S.Ct. 1032, 1035, 137 L.Ed.2d 132 (1997); *Connecticut National Bank v. Germain,* 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992); *Reid v. Dept. of Commerce,* 793 F.2d at 281 (Fed.Cir.1986). As demonstrated above, the court here feels that the effect of the statute's amendment is clear. Still, as this is a reversal of position by Congress via the insertion of a single word, it is prudent for the court to seek confirmation of its analysis in the amendment's history.

Unfortunately, there is no reported legislative history that would assist in interpreting the 1994 amendment to 5 U.S.C. § 7121(a) aside from statements made by two National Treasury Employees Union officials during the subcommittee hearings regarding the Whistleblower Act.[17] The plaintiffs claim

---

**14.** Defendant contends that, in light of new subsection (g), the insertion of "administrative" is at least ambiguous and, thus, calls for an examination of the legislative history. The court disagrees with defendant on this point. Moreover, the court notes that, as shown below, the legislative history provides no support for defendant's position on this issue.

**15.** Defendant does not claim that the plaintiffs in these cases are governed by any of the exception subsections.

**16.** The court is aware of the decisions of the United States Court of Appeals for the Federal Circuit in *Aamodt v. United States,* 976 F.2d 691 (Fed.Cir.1992), and *Muniz v. United States,* 972 F.2d 1304 (Fed.Cir.1992). However, because both cases relied on *Carter v. Gibbs* and because both cases were decided before the amendment to the statute, this court does not find that these decisions dispose of the cases at bar.

This court is also mindful of the decision in the United States Court of Federal Claims in *Martin v. United States,* 40 Fed.Cl. 726 (1998), in which a judge on this court issued a decision in a case factually similar to this one. The parties in *Martin v. United States* did not, however, address how the change of "exclusive procedure" to "exclusive administrative procedure" affected the interpretation of the CSRA. Although the amended version of 5 U.S.C. § 7121(a)(1) was quoted in the opinion, the Court of Federal Claims judge reached his decision by heavily relying on *Carter v. Gibbs,* which, as noted above, based its decision on the pre–1994 version of the statute. Thus, this court, in relying on the amended version of the CSRA at 5 U.S.C. § 7121(a) (1994), also does not find the decision in *Martin* instructive.

**17.** Plaintiffs refer to *H.R. 2970, To Reauthorize the Office of Special Counsel and To Make Amendments to the Whistleblower Protection Act: Hearing before the Subcomm. on the Civil Serv. of the Comm. on Post Office and Civil Serv.,* 103d Cong. 20–23 (1993) (statements of Timothy Hannapel, Assistant Counsel, National Treasury Employees Union, and Robert M. Tobias, President, National Treasury Employees Union). At these hearings, Mr. Hannapel stated:

that this subcommittee hearing should be used as an authoritative guide on the legislative intent of Congress because the amendment to 5 U.S.C. § 7121 was introduced and approved by both houses following the union officials' testimony. The plaintiffs state that "[t]he proximity of the amendment to the Union's testimony, coupled with the fact that the Union's testimony and the final language of the amendment are virtually identical, strongly indicates that the amendment was in response to the Union's suggestions." Although *Dawson Chemical Co. v. Rohm & Haas Co.*, 448 U.S. 176, 204, 100 S.Ct. 2601, 65 L.Ed.2d 696 (1980), regards subcommittee hearings as a relevant way to attain a full understanding of the final legislative product, the court notes that language included in a footnote to a later United States Supreme Court opinion suggests that congressional hearing statements not made by a member of Congress or included in the official House and Senate Reports for the statute in question are not to be accorded legal significance in interpreting the purpose of the statute. *Kelly v. Robinson*, 479 U.S. 36, 51 n. 13, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986).

In the end, "only the most extraordinary showing of contrary intentions" by the legislative history will justify departure from a statute's unambiguous plain language. *Garcia v. United States*, 469 U.S. 70, 75, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984). The reported history of amended section 7121(a) provides no support for defendant's position that the CSRA continues to foreclose parties in the plaintiffs' situation from the judicial remedies provided by the FLSA. The import of the CSRA's amended plain language, through the addition of the word "administrative," leads to the conclusion that Congress did, in fact, desire that federal parties

covered by negotiated grievance procedures be allowed to enforce their rights in court if they so choose.

### CONCLUSION

After thoroughly reviewing the parties' pleadings, briefs and arguments, the court has construed the amended version of 5 U.S.C. § 7121(a)(1) (1994) and determined that the statute's language is clear on its face. The change of the phrase "exclusive procedure" to "exclusive administrative procedure" dictates that plaintiffs should not be barred from filing their claims in this court even though they originally were covered by a negotiated grievance procedure. This court, therefore, has subject matter jurisdiction over plaintiffs' claims and, hereby, **DENIES** the defendant's motion to dismiss in Case Nos. 96–480C and 96–4801C.

**IT IS SO ORDERED.**

we suggest a provision to make sure that the new administrative remedies that are contained in this bill are not interpreted by courts to foreclose judicial remedies that might be contained in other statutes.
\* \* \*
[I]f the grievance procedure is made exclusive, we believe the law should be clarified that it would only be the exclusive administrative remedy but would not foreclose judicial remedies contained in other statutes, and I particularly point to the Federal [C]ircuit's decision in [*Carter v. Gibbs* ] that is noted in Mr. Tobias' testimony. Congress intended the grievance

procedure to be a strong avenue but courts have misinterpreted that intent to take away the individual rights of individual employees under, for example, the overtime pay statutes and the Privacy Act[,] to go to court.
*Id.* at 20–21. Mr. Tobias, in his prepared statement, made a similar request: "we would like to propose a change to existing law, as interpreted by the Federal Circuit in *Carter v. Gibbs*, to ensure that the negotiated grievance procedure is the exclusive administrative procedure, but does not supplant any remedies which allow Federal employees to be heard directly in Federal court."
*Id.* at 23.